COMMONWEALTH *vs.* PETER A. LOVE.

No. 01-P-242.

Berkshire. April 11, 2002. - October 8, 2002.

Present: DUFFLY, KANTROWITZ, & COHEN, JJ.

*Search and Seizure,* Automobile. *Constitutional Law,* Search and seizure, Investigatory stop, Reasonable suspicion.

Where a citizen witness presented himself in person to the police and was readily identifiable, even though he was not actually identified, the witness's report of information of some urgency, which he obtained through personal observation, was sufficiently reliable to justify the investigatory stop of the criminal defendant's vehicle. [231-235]

COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on October 8, 1999.

A pretrial motion to suppress evidence was heard by *Alfred A. Barbalunga,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Judith A. Cowin,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported to the Appeals Court by her.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Jennifer Tyne* for the defendant.

COHEN, J. Before us is the Commonwealth's interlocutory appeal[1] from a District Court judge's allowance of the defendant's motion to suppress evidence obtained during a stop of his motor vehicle by a State police officer. The stop was made as a result of a report by a citizen, delivered in person to the desk officer at State police barracks, that he had just observed a car driving er-

---

[1]The Commonwealth was given leave to appeal pursuant to Mass.R.Crim.P. 15(a)(2), as amended, 422 Mass. 1501 (1996), by a single justice of the Supreme Judicial Court.

ratically and chasing a truck at a speed in excess of eighty miles per hour. Although the citizen did not ask to remain anonymous, the desk officer did not take down his name. The officer did make a note of the license plate number of the car from which the citizen emerged.

After first denying the defendant's motion to suppress, the judge reconsidered it just before trial and allowed it based upon the then newly decided case of *Commonwealth* v. *Lubiejewski*, 49 Mass. App. Ct. 212 (2000). We agree with the Commonwealth that *Lubiejewski*, while instructive on some aspects of this case, is distinguishable, because it involved an informant who conveyed a tip about an erratically driven motor vehicle by placing two anonymous telephone calls to the police from a car phone. Here, on the other hand, a citizen witness presented himself in person to the police and was readily identifiable. These facts militate in favor of a different analysis.

*Facts.* The findings of the motion judge may be summarized as follows. On October 8, 1999, at approximately 9:15 A.M., a man stopped at the State police barracks in Cheshire, on Route 8, and reported in an excited voice that a maroon Grand Prix automobile was chasing an Aladco truck southbound on Route 8, in excess of eighty miles per hour. The desk officer, Trooper Gamari, knew that Aladco was a laundry facility approximately three miles north of the State police barracks on Route 8. He also knew that, except for a small section, Route 8 has but a single lane in each direction and that, at that hour of the morning, there would be a significant amount of commuter traffic on this road.

Trooper Gamari did not recognize or know the person who presented himself, and, apparently because of mistake or inadvertence caused by the urgency of the situation, he did not obtain the individual's name. However, the trooper did note that the man came into the parking lot in a vehicle that bore a Massachusetts license plate. The trooper took down the registration number and, after checking it through the Registry of Motor Vehicles computer, learned that the plate was assigned to an individual named Shawn Bohl of Adams. While originally it was assumed that Bohl was the reporter, it later was discovered

that the individual who presented himself to Trooper Gamari was Bohl's passenger and coworker.[2]

As a result of the citizen's report, Trooper Gamari sent out a radio bulletin for a maroon Grand Prix chasing an Aladco truck southbound on Route 8, traveling at eighty miles per hour. The bulletin was heard by Sergeant Sheehan, who soon observed an Aladco truck traveling south on Route 8 but did not stop it because he did not see a maroon Grand Prix behind it. Shortly thereafter, however, he saw another Aladco truck with a maroon Grand Prix directly behind it. The two vehicles were stopped at a traffic light at the Berkshire Mall entrance on Route 8, approximately eight miles south of the State police barracks. Sergeant Sheehan did not see either driver commit any civil infraction, and he did not observe either to be speeding; but based on the radio bulletin, he pulled both vehicles over to investigate. As a result of the stop, the defendant, who was the driver of the Grand Prix, was arrested and charged with operating under the influence of liquor, third offense.

*Discussion.* Since it is not contended that the facts found by the judge are unsupported by the record, we confine ourselves to making an independent determination of the correctness of the judge's application of constitutional principles to the facts as found. *Commonwealth* v. *Stoute*, 422 Mass. 782, 783 n.1 (1996). More particularly, we consider whether, at the time of the stop, Sergeant Sheehan had an objectively "reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that [the operator of] the . . . motor vehicle had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 (1996). Accord *Commonwealth* v. *Alvarado*, 427 Mass. 277, 280-281 (1998). Where, as here, the investigatory stop was

[2]This information did not come to light until just before trial, when the defendant moved for reconsideration of the denial of his motion to suppress. Bohl testified at the reconsideration hearing that he and his coworker were on their way to work when a car sped by, overtaking an Aladco truck and driving very erratically. Bohl explained that it was his passenger who jumped out and reported the situation to the State police. Bohl did not refer to his coworker by name and was not asked to do so. The motion judge concluded that the fact that the tipster was actually Bohl's passenger would not affect his ruling, but he nevertheless determined that a different outcome was required in light of *Commonwealth* v. *Lubiejewski, supra.*

based on a tip, our focus is on the tipster's reliability and his basis of knowledge, together with any independent police corroboration that may compensate for deficiencies in one or both of these factors. *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990).

In this case, there is no issue as to the "basis of knowledge" prong, as the source of the tip was a citizen witness who obtained his information through personal observation. See *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990). "[T]he basis of the informant's knowledge appeared within the tip itself, in which he . . . described the operation of the [vehicles] as [they were] being driven along the highway." *Commonwealth* v. *Lubiejewski*, 49 Mass. App. Ct. at 214. We therefore limit our discussion to whether the reliability prong was satisfied. We conclude that it was, given that the citizen witness was identifiable if not identified, and he presented himself to the police in person to report information of some urgency.[3]

Massachusetts cases draw a distinction between anonymous informants and other citizens who supply police officers with information, including witness bystanders, victims, and participants in the crime. "When information is provided to police by a 'named and identified person' rather than a faceless informer, *Commonwealth* v. *Atchue*, 393 Mass. 343, 347 (1984), or by an identified private citizen, *Commonwealth* v. *Burt*, 393 Mass. 703, 710 (1985), or by a named citizen calling out of civic duty, *Commonwealth* v. *Rojas*, 403 Mass. 483, 488 (1988), the strict requirements of reliability that govern the analysis of an anonymous informant's trustworthiness are relaxed. *Commonwealth* v. *Freiberg*, 405 Mass. 282, 297, cert. denied, 493 U.S. 940 (1989). Compare *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969)." *Com-*

---

[3]The Commonwealth also emphasizes that Sergeant Sheehan corroborated the tip when he came upon the described vehicles proximate to each other, down the road from where the informant claimed to have seen them. However, because the corroboration went only to "obvious details," we consider it to be of little value in substantiating the reliability of the informant. See *Commonwealth* v. *Lyons*, 409 Mass. at 21-22; *Commonwealth* v. *Lubiejewski*, *supra* at 214-215.

*monwealth* v. *Riggieri*, 53 Mass. App. Ct. 373, 375 n.3 (2001), further appellate review granted, 435 Mass. 1109 (2002).[4]

Moreover, even though "a tip from a private citizen is substantially strengthened when the citizen is identified by name and address," *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 68 (1997), such information is not invariably required to establish reliability. See *Commonwealth* v. *Stoute*, 422 Mass. at 783-784 & n.3, 790-791 (informant was a bystander who spoke face-to-face to police and "could have been identified"); *Commonwealth* v. *Vazquez*, 426 Mass. 99, 100-102 (1997) (reasonable suspicion established where unidentified bystanders pointed to the defendant); *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 336-337 (1994) (pat-down upheld where "a neighborhood person known to" the officer reported that defendant had a gun in her purse); *Commonwealth* v. *White*, 44 Mass. App. Ct. 168, 172 (1998), quoting from *Commonwealth* v. *Stoute*, 422 Mass. at 790-791 (reasonable suspicion established "[e]ven without an informant identified by name . . . [where] the information . . . 'was provided by bystanders who could have been identified' "); *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671, 672, 676 (2000) (patfrisk justified where officer was acquainted with and had spoken to the reporting bystander on several occasions, but did not know his name).

The face-to-face character of the citizen witness's contact with the police is significant,[5] but it is not dispositive: if an in-person informant declines to identify himself, his report remains subject to the greater scrutiny given anonymous tips. See *Commonwealth* v. *Barros*, 435 Mass. 171, 177 & n.7 (2001). The guiding principle is whether the informant "places his anonymity at risk." Grasso & McEvoy, Suppression Matters Under

---

[4]As a general proposition, a citizen witness has "elevated status . . . over a police informer . . . [because] the motive to falsify information is lacking." Smith, Criminal Practice and Procedure § 120, at 87 (2d ed. 1983) (discussing hearsay statements from citizen witnesses as a basis for probable cause).

[5]See, e.g., *Commonwealth* v. *Grinkley*, *supra* at 68, where "a person previously unknown to and never actually met by the police," communicated her tip by telephone and provided her name and address, but not her telephone number. As a result, the court concluded that the informant's identity could not be verified, thus her "inaccessibility . . . and resultant unaccountability for providing false information . . . made [her] barely distinguishable from an anonymous tipster." *Id.* at 69.

Massachusetts Law § 4-3(c)(2), at 4-26 (2001). If so, "a court can consider this factor in weighing the reliability of the tip." *Ibid.*

The rationale for according more weight to the reliability of persons who are either identified or able and not unwilling to be identified is that these individuals do not "have the protection from the consequences of prevarication that anonymity would afford." *United States* v. *Lopez-Gonzalez,* 916 F.2d 1011, 1014 (5th Cir. 1990). Identified and readily identifiable individuals expose themselves to charges of filing false reports,[6] see *Commonwealth* v. *Grinkley,* 44 Mass. App. Ct. at 69, and they risk reprisal from those they accuse, see *People* v. *Polander,* 41 P.3d 698, 703-704 (Colo. 2001).

Here, the citizen witness placed his anonymity at risk by contacting the police face-to-face, and, having alighted from a car whose license plate was visible to the desk officer, he was potentially traceable. As the motion judge recognized, the failure of the desk officer to obtain greater identifying information was likely due to the urgency of the situation. It was not a function of a request by the informant to remain anonymous. Contrast *Commonwealth* v. *Barros,* 435 Mass. at 172 n.1.

Because there was no immediate, ongoing emergency at the time Sergeant Sheehan located the vehicles, we decline the Commonwealth's invitation to decide the case based on the emergency doctrine. See *Commonwealth* v. *Lubiejewski,* 49 Mass. App. Ct. at 215. Contrast *Commonwealth* v. *Hurd,* 29 Mass. App. Ct. 929, 930 (1990). Nevertheless, we think it of some relevance in assessing the objective reasonableness of the police response that the target of the tip was in a moving vehicle and that the situation described presented an imminent danger to the public. See *Commonwealth* v. *Barros, supra* at 177 n.7, discussing *United States* v. *Sierra-Hernandez,* 581 F.2d 760 (9th Cir.), cert. denied, 439 U.S. 936 (1978). A report that a vehicle is chasing another vehicle at eighty miles per hour on a single

---

[6]See G. L. c. 269, § 13A ("Whoever intentionally and knowingly makes or causes to be made a false report of a crime to police officers shall be punished by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment in a jail or house of correction for not more than one year, or both").

lane road at a time when there would be heavy commuter traffic calls for prompt police investigation. Thus, the nature of the situation, together with the reliability of the citizen witness, gave the State police a reasonable basis for stopping the defendant's vehicle.

The order allowing the defendant's motion to suppress is reversed.

*So ordered.*