COMMONWEALTH *vs.* JAMES J. McDEVITT.

No. 01-P-1841.

Middlesex. January 17, 2003. - April 7, 2003.

Present: BECK, GELINAS, & KANTROWITZ, JJ.

*Motor Vehicle,* Operating under the influence. *Constitutional Law,* Investigatory stop. *Search and Seizure,* Threshold police inquiry. *Threshold Police Inquiry.*

A police officer could properly conduct a "well-being" check of a vehicle stopped in the breakdown lane of a highway, even though the officer had previously received tips that the same car was driving erratically and had already commenced an investigatory search for that car [736-737]; moreover, the officer's reliance on anonymous information regarding the vehicle did not render the check improper, where the check was not an investigatory stop, and where, even assuming that the stop was investigatory, the nature of the situation, together with the reliability of the citizen witnesses who had provided the tips, gave the officer a reasonable basis for stopping the vehicle [737-738].

COMPLAINT received and sworn to in the Waltham Division of the District Court Department on June 18, 2001.

After transfer to a jury of six session of the Cambridge Division, a motion to dismiss was heard by *Michele B. Hogan, J.,* and the case was tried before her.

*Martin F. Kane, II,* for the defendant.

*Jane L. Fitzpatrick,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. May the police validly engage in a "well-being check" on a vehicle stopped in the breakdown lane of a highway when there were previous tips that the same car was driving erratically and the police had already commenced an investigatory search for the car? We hold that when the well-being check arises out of objective circumstances, they may.

*Facts.* Jeffrey Paul Morrill, a State trooper, found the

defendant, James J. McDevitt, at approximately 10:30 P.M. on June 17, 2001, sitting in his car in the breakdown lane of the Massachusetts Turnpike with the motor running and headlights on. Through an open window on the driver's side, the trooper smelled a strong odor of alcohol. The defendant was arrested after failing two sobriety tests, the one-legged stand and the heel-to-toe test.

Following a jury trial, the defendant was found guilty of operating a motor vehicle while under the influence of alcohol.[1] The defendant's motions for a required finding of not guilty and a new trial were denied. He was sentenced to two years in the house of correction with nine months to serve, the balance suspended for two years.[2]

Prior to trial, the defendant filed a motion to dismiss,[3] claiming that the Commonwealth was unable to establish either the basis of knowledge or the reliability required of anonymous informants under the *Aguilar-Spinelli* test. See *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969).

At the hearing on the motion to dismiss, the arresting officer, Trooper Morrill, testified as the sole witness for the Commonwealth. On the night of June 17, 2001, while Morrill was routinely patrolling the Massachusetts Turnpike, he received a radio dispatch that there had been several calls reporting that a black Buick Cutlass automobile, registration number 853 ZTO, traveling eastbound just behind Morrill's position was being driven erratically. Based on this information, he pulled his

---

[1]This was the only charge presented to the jury. The defendant also originally was charged with operating a motor vehicle with a suspended license, to which the defendant pleaded guilty and was given an agreed-upon sentence of ten days, suspended, in the house of correction; operating an uninsured motor vehicle with a suspended registration, which was dismissed; and speeding and marked lanes violations, for which the defendant was found not responsible. After the verdict, the defendant was found guilty, in a jury waived trial, of operating a motor vehicle under the influence of alcohol (third offense).

[2]The defendant's motion for stay of execution of sentence pending appeal was denied. The defendant appealed that decision to a single justice of our court, where it was once again denied. The defendant appealed that decision. At oral argument, the defendant waived the issue.

[3]The proper motion should have been one to suppress.

cruiser over in anticipation that the black Buick would pass him. While waiting for the car, two other motor vehicles pulled beside him. The drivers rolled down their windows and yelled that there was a vehicle, describing the same black sedan, behind them and approaching Morrill's position that needed to be stopped. Out of safety considerations, Morrill wanted those two vehicles to continue on; thus, he did not ascertain the identities of the drivers who called to him.

Morrill waited for approximately ten minutes and, when the suspect car did not pass, he reversed his direction, hoping to locate it. While traveling westbound, he observed a car, fitting the description previously given, in the breakdown lane of the eastbound side. Morrill once again reversed direction. In accordance with standard safety policies, he activated his blue lights as he pulled behind the stopped car, in which two men were seated. Morrill, flashlight in hand, approached the driver's side where he encountered the defendant.[4]

Morrill further testified that he would have reversed direction to check on the car, regardless whether it matched the reported description, because it was his duty under State police and Massachusetts Turnpike Authority policies. His one-page report, which did not mention a "well-being check," was admitted in evidence at the defendant's request. The judge, finding Morrill's testimony credible, denied the motion to dismiss, concluding that Morrill was performing a caretaking function and not a motor vehicle stop.

On appeal the defendant argues that (1) the stop was investigatory in nature, based upon unreliable information from unidentified sources; and (2) the Commonwealth's claim that Morrill was engaged in a "well-being check" was not grounded in the evidence presented, but was rather an excuse to

---

[4]At trial, Morrill testified that, when he approached the car on the driver's side, he smelled alcohol through the driver's open window. Morrill asked the defendant for his license and registration two times, requests to which the defendant did not respond. He then asked the defendant where he was coming from. The defendant answered Boston, despite being on the eastbound side of the Massachusetts Turnpike heading towards Boston. Morrill observed that the defendant's eyes were extremely watery and bloodshot. The defendant was asked to step out of the vehicle and perform the two sobriety tests, which he failed.

circumvent the heightened requirements of the *Aguilar-Spinelli* test. We affirm.

*Discussion.* " 'Not all personal intercourse between police [officers] and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' *Commonwealth* v. *Leonard*, 422 Mass. 504, 508, cert. denied, 519 U.S. 877 (1996), quoting [from] *Terry* v. *Ohio*, [392 U.S. 1,] 19 n.16 [(1968)]. Moreover, there are certain interactions between police officers and citizens that do not require judicial justification. Local police officers are charged with 'community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' *Cady* v. *Dombowski*, 413 U.S. 433, 441 (1973)." *Commonwealth* v. *Evans*, 436 Mass. 369, 372 (2002).

The decision to make a well-being check must be reasonable in light of an objective basis for believing that the defendant's safety and well-being may be in jeopardy. See *Commonwealth* v. *Murdough*, 428 Mass. 760, 762 (1999). That concern extends, in certain circumstances, to the safety of the public as well.[5]

Morrill's approach to the defendant's car in the breakdown lane falls within this community caretaking function. It was after 10:30 P.M. on a high speed highway and the defendant was pulled over in a location normally associated with disabled vehicles, with the motor running and the headlights on. It was permissible, in these circumstances, for Morrill to approach and check the stopped motor vehicle out of concern both for the occupants in the stopped car and for the public using the roadway.

That Morrill might have harbored a subjective belief, even a compelling one, that the operator was engaged in illegal behavior does not affect our decision. "[A]n officer's motive

---

[5]While the majority of the case law has thus far grounded the community caretaking function on concern for the safety of the vehicle's occupants, concern for the safety of the public using the roadway is equally compelling. "If the community caretaking function . . . means anything, surely it allows a police officer to determine whether a driver is in such a condition that if he resumes operation of the vehicle, in which he is seated at a highway rest stop, he will pose such an extreme danger to himself and others." *Commonwealth* v. *Murdough*, 428 Mass. at 764.

[does not] invalidate[] objectively justifiable behavior." *Commonwealth* v. *Murdough*, 428 Mass. at 762, quoting from *Commonwealth* v. *Murdough*, 44 Mass. App. Ct. 736, 740 (1998). Nor does a trooper's activation of his blue lights "change the nature of the encounter into a seizure." *Commonwealth* v. *Evans*, 436 Mass. at 373. Using overhead lights at night at the side of a road is a safety measure.

An officer may check on a stopped motor vehicle in the breakdown lane of a highway. *Id.* at 372-373. To except those who, while similarly situated, are also suspected of committing a crime would serve little purpose other than to jeopardize both the safety of those in the stopped car and the public using the road.

The defendant rightly asserts that when the police rely on anonymous information to conduct an investigatory stop, the burden is on the Commonwealth to establish the basis of knowledge and reliability of the informant. *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990). This principle, however, is not decisive here for two reasons. First, as stated above, we do not regard this as an investigatory stop. Second, even if we were to consider the stop investigatory in nature, the test for determining the basis of knowledge and reliability of the informants was met. See *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229 (2002).[6] In *Love*, "a citizen witness presented himself in person to the police and was readily identifiable." *Id.* at 230. "[E]ven though 'a tip from a private citizen is substantially strengthened when the citizen is identified by name and address,' *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 68 (1997), such information is not invariably required to establish reliability. . . . The guiding principle is whether the informant 'places his anonymity at

---

[6]We disagree with the defendant's characterization of the witnesses as anonymous. "Massachusetts cases draw a distinction between anonymous informants and other citizens who supply police officers with information, including witness bystanders . . . . 'When information is provided to police by a "named and identified person" rather than a faceless informer, . . . or by an identified private citizen, . . . or by a named citizen calling out of civic duty, . . . the strict requirements of reliability that govern the analysis of an anonymous informant's trustworthiness are relaxed." *Commonwealth* v. *Love*, 56 Mass. App. Ct. at 232, quoting from *Commonwealth* v. *Riggieri*, 53 Mass. App. Ct. 373, 375 n.3 (2001), *S.C.*, 438 Mass. 613 (2003).

risk.' Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 4-3(c)(2), at 4-26 (2001)." *Commonwealth* v. *Love*, 56 Mass. App. Ct. at 233-234.[7]

Here, two drivers of two cars approached Morrill, while he was anticipating the approach of the defendant's car, and placed their anonymity at risk by stopping at the officer's marked police vehicle and talking to the trooper face-to-face. Both individuals were potentially traceable via their license plates, even though they were not actually traced. Morrill, the record indicates, did not obtain identifying information because of concerns for their safety, being stopped by the side of the highway, not because of a request by the individuals to remain anonymous. "[T]he nature of the situation, together with the reliability of the citizen witness[es], gave the State police a reasonable basis for stopping the defendant's vehicle." *Commonwealth* v. *Love*, 56 Mass. App. Ct. at 235. See *Commonwealth* v. *Riggieri*, 438 Mass. 613 (2003).

*Judgment affirmed.*

*Order of the single justice affirmed.*

---

[7]As in *Love*, the basis of knowledge test was readily met. "In this case, there is no issue as to the 'basis of knowledge' prong, as the source of the tip was a citizen witness who obtained his information through personal observation." *Id.* at 232.