Fishman, Kenneth J., J.
The defendant, Jean Aman, has been indicted for numerous firearms-related offenses, as well as trafficking in cocaine. He now moves to suppress evidence seized from his apartment and statements that he claims are fruits of the poisonous tree. After a hearing, and for the following reasons, the motion to suppress is ALLOWED.
FINDINGS OF FACT
In the morning hours of January 19, 2005, two Boston police officers, responding to information that there was drug activity ongoing in the backyard of 65 Clifford Street, Roxbuiy, Massachusetts, went to that address. When the officers failed to observe any unlawful activity in the backyard, they sought entry to the three-family house located at this address. The officers were in plain clothes, wore badges around their necks, and had arrived in an unmarked cruiser. They rang all three doorbells, and observed an individual whom they later saw in Apartment No. 3 on the second floor come down the stairways, turn around, and retreat up the stairs, without letting the police officers into the building. A female from the first-floor apartment let the police officers into the building, but said she was sleeping and did not want to talk. The officers identified themselves as the police, and she responded “do what you want.” The officers proceeded from the common hallway of the first floor to the second floor without entering the woman’s first-floor apartment.
When they arrived on the second floor, the officers knocked on the door of Apartment No. 3, one of two apartments on that floor. They announced that they were the Boston Police officers. The door was opened by Gerald Grand-Pierre, and, at that point, Officer Philip Bliss smelled an odor of burnt marijuana.[1] Grand-Pierre, who testified at the hearing on this motion, acknowledged that he and the other persons present in the apartment had shared a marijuana joint approximately one-half hour prior to the police arriving. Grand-Pierre was asked by the police if he had any complaints of activity around the house, specifically referencing drug and prostitution in the backyard of the building. Grand-Pierre responded that there were just “crack heads smoking in the backyard.” Then, Grand-Pierre, in a soft voice, stated to the officers “come in,” and motioned for them to enter by a wave of his hand.[2] Grand-Pierre was not asked whether he lived in the apartment or leased it, nor was he asked whether the person who rented the apartment was present. If they had inquired, the police would have learned that Grand-Pierre had been a friend of the defendant and the defendant’s brother for five years and saw them on a regular basis. Indeed, he had slept in Apartment No. 3 the previous night.
When the police entered, they looked to the left and saw three people in a living room area. The officers smelled an even stronger odor of marijuana upon entry but did not observe anyone smoking marijuana, nor did they observe any drug paraphernalia. There was no immediate sign of weapons, and the officers did not observe any movements by the individual which would suggest that the officers were at risk. While Officer Bliss was speaking with the individuals in the living room,[3] Officer Doyle conducted a protective sweep of the apartment. Doyle went into the bedroom, and motioned for Bliss to come over. Doyle quietly informed Bliss that there was a gun in the bedroom. A black handgun was located on top of shoe boxes.
The officers radioed for backup. They did not, however, pat frisk the occupants of the apartment at that time, and acknowledged that they did not feel threatened. Eight to nine additional officers arrived, and the individuals in the apartment, including the defendant who had returned to his apartment, were given their Miranda rights. None of the occupants of the apartment were asked by Bliss if they had a license for the gun.[4] None of those present were charged with marijuana-related offenses. The apartment was frozen to make sure that no one entered it while a warrant was sought. The occupants, including the defendant, were taken to the police station. The apartment was searched pursuant to a warrant that was later obtained. The defendant was brought to the police station because he was on the lease and lived in the bedroom. He was questioned at the station, and apparently made statements.
CONCLUSIONS OF LAW 1. Consent
As the Supreme Judicial Court stated in Commonwealth v. Sanna, 424 Mass. 92, 96-97 (1997):
The Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution prohibit warrant- *592 less arrests in the home or warrantless searches and seizures, “absent exigent circumstances or consent.” Commonwealth v. Voisine, 414 Mass. 772, 783 (1993), quoting Commonwealth v. Derosia, 402 Mass. 284, 286, cert. denied, 488 U.S. 980 (1988). When police seek to justify a warrantless arrest or entry on the basis of consent, the Commonwealth must show “consent unfettered by coercion, express or implied, and also something more than mere ‘acquiescence to a claim of lawful authority.’ ’’ Commonwealth v. Voisine, supra, quoting Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). The voluntariness of an individual’s consent to a warrantless entry is an issue of fact, and must be examined in the circumstances of the case. See Commonwealth v. Voisine, supra; Commonwealth v. Harris, 387 Mass. 758, 766 (1982); Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976).
As the Sanaa court noted, while the fact that a person is not informed by police that he has the right to refuse to consent to an entry is a factor to be considered on the issue of voluntariness, it is not determinative on that issue. 424 Mass. at 98 n.10, citing Harris, 387 Mass. at 747 n.5; Walker, 370 Mass. at 555.
In this case, the Commonwealth seeks to justify its entry into the defendant’s apartment based principally on Grand-Pierre’s alleged consent to that entry. Consent to a warrantless search may be given by a person with common authority over the premises. United States v. Matlock, 415 U.S. 164, 171 (1974); Commonwealth v. Martin, 358 Mass. 282, 289 (1970); Commonwealth v. Brown, 32 Mass.App.Ct. 649, 652 (1992). The Commonwealth does not allege, nor can it based on the evidence in this record, that Grand-Pierre had common authority over the premises which would have given him actual authority to consent to the entry of the police. Rather, the Commonwealth maintains that the police may rely on the consent of Grand-Pierre as a third party whom they reasonably, but mistakenly believed had common authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 186 (1990); Commonwealth v. Rogers, 444 Mass. 234, 249 (2005) (Greaney, J., dissenting), citing Illinois v. Rodriguez, supra; Commonwealth v. Ortiz, 422 Mass. 64, 70 (1996); Commonwealth v. Wahlstrom, 375 Mass. 115, 118 (1978).
The facts available to the police officers at the moment that Grand-Pierre told them to come in and gestured in a welcoming manner would not have warranted a man of reasonable caution in believing that Grand-Pierre had authority over the premises. Illinois v. Rodriguez, 497 U.S. at 188. That Grand-Pierre was the individual who opened the door and that he seemed to express some knowledge about the activities occurring in the backyard were insufficient facts to establish apparent authority. No questions were asked of him by the police before they entered the apartment as to whether he was an occupant or lessee of the apartment. The police had no information at the time that they entered the apartment concerning whether Grand-Pierre regularly stayed in that apartment, had keys to it, or otherwise exercised any control over the premises. Indeed, the police were immediately aware that there were other individuals in the apartment and, therefore, to a reasonable police officer in these circumstances, Grand-Pierre was as likely a visitor to the apartment as he was a person having joint access or control over it. Because Grand-Pierre had no apparent authority to consent to the entry by the police, it is of no consequence whether the act of permitting the police to enter was voluntary or not.[5]
2. Community Caretaking
The Commonwealth, citing Commonwealth v. Leonard, 422 Mass. 504 (1996), maintains that even if entry was not justified as a consensual act, the officers were complying with their duty as community caretakers when entering pursuant to Grand-Pierre’s request. In Leonard, the Court found that the officer’s act of opening a car door where the driver of the vehicle had been unresponsive, was “the kind of police-citizen interchange that constitutes no intrusion and requires no justification.” Id. at 508. As the Appeals Court stated in Commonwealth v. McDevitt, 57 Mass.App.Ct. 733, 736 (2003):
“Local police officers are charged with ‘community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.’ Cady v. Dombowski, 413 U.S. 433, 441 (1973).” Commonwealth v. Evans, 436 Mass. 369, 372 (2002).
The decision to make a well-being check must be reasonable in light of an objective basis for believing that the defendant’s safety and well-being may be in jeopardy. See Commonwealth v. Murdough, 428 Mass. 760, 762 (1999). That concern extends, in certain circumstances, to the safety of the public as well.
The McDevitt court noted further that the fact that the police officer
might have harbored a subjective belief, even a compelling one, that the [defendant] was engaged in illegal behavior does not affect our decision. “[A]n officer’s motive [does not] invalidate! ] objectively justifiable behavior.” Commonwealth v. Murdough, 428 Mass. at 762, quoting from Commonwealth v. Murdough, 44 Mass.App.Ct. 736, 740 (1998).
57 Mass.App.Ct. at 736-37.
The so-called “community caretaking function,” most often arising in connection with motor vehicle investigations, has no application to the case before this Court. Here, the Fourth Amendment applies because an objective view of the facts requires the conclusion that the police were engaged in a criminal *593 investigation, motivated by the search for evidence, rather than a caretaking activity when they entered the apartment. See Commonwealth v. Sondrini, 48 Mass.App.Ct. 704, 706-07 (2000). The police did not make entry into the apartment until they had smelled burnt marijuana upon the opening of the apartment door by Grand-Pierre. Indeed, this objective view of the evidence is fortified by the subjective view of the police at the time of the entry. There was no suggestion in the relatively contemporaneous affidavit filed in support of the application for a search warrant that the police believed that they were engaged in a caretaking function at the time of entry.
There being no exigency or other exception to the warrant requirement of the Fourth Amendment justifying the entry into the apartment, the police had no legal basis on which to conduct even a protective sweep therein. Thus, even if the police had probable cause to conduct a search by virtue of the odor of marijuana they encountered upon the opening of the door by Grand-Pierre, it is of no legal consequence.[6]
Accordingly, the defendant’s motion to suppress evidence must be allowed. Although Officer Bliss testified that all the occupants of the apartment received Miranda warnings, the record is not clear concerning whether the defendant made statements to the police at the apartment as well as at the police station. Moreover, the record does not reveal whether the defendant received separate warnings at the police station, and whether the statements made there were sufficiently remote in time or affected by intervening circumstances so as to dissipate the taint of the unconstitutional search and seizure. The burden, however, is on the Commonwealth to show that the statements have “not been obtained by exploiting the illegality,” and, given the absence of evidence on this issue, the statements, as well as the evidence seized from the apartment must be suppressed. See Commonwealth v. Johnson, 58 Mass.App.Ct. 12, 14(2003), and cases cited therein.
ORDER
For the foregoing reasons, it is hereby ORDERED, that the defendant’s motion to suppress evidence and statements is ALLOWED.

 Bliss testified that he smelled marijuana both before and after the door was opened. This Court does not credit the claim that the officers smelled marijuana prior to the door being opened, particularly given that the affidavit in support of the application for the search warrant for this apartment, written later in the day of January 19, 2005, was specific in its averment that “[w]hile the door to apartment #3 was opened the officer could smell a strong odor of burnt marijuana coming from inside the apartment.”

 Grand-Pierre denies that he ever said or did anything to invite the officers into the apartment. This Court does not find that Grand-Pierre was credible on this issue.

 The other individuals in the living room also acknowledged that they had been smoking marijuana.

 The search warrant affidavit does indicate that officers did demand F.I.D. cards or licenses to cany a firearm from the occupants of the apartment, but none were produced.

 If Grand-Pierre had actual or apparent authority to consent to the entry by the police officers into the apartment, the record establishes that the consent was voluntary. Grand-Pierre, both explicitly and implicitly, consented to the police entry even before the police requested permission to enter.

 While an odor of marijuana itself may be sufficient to satisfy the probable cause requirements of the Fourth Amendment where the officer’s experience enabled him to identify the smell; see Commonwealth v. Lawrence L., 439 Mass. 817, 823-24 (2003), citing Johnson v. United States, 333 U.S. 10, 13 (1948); Commonwealth v. Kitchings, 40 Mass.App.Ct. 591, 597 n.8 (1996); most cases in Massachusetts have involved an odor emanating from an individual or a mo tor vehicle. See, e.g., Lawrence L., supra; Commonwealth v. Baez, 47 Mass.App.Ct. 115, 117-19 (1999); Kitchings, supra; Commonwealth v. Fabian, 18 Mass. L. Rptr. 587, 2004 WL 3090178 * 2 (Mass.Super. 2004). In Commonwealth v. Monterrosso, 33 Mass.App.Ct. 765, 768-69 (1992), a case dealing with the search of a residence, the odor of marijuana was among several factors used to support probable cause for a search warrant. Numerous other jurisdictions have found, relying on Welsh v. Wisconsin, 466 U.S. 740 (1984), that the smell of burning marijuana does not evidence an offense which is sufficiently grave to justify entering a residence without a warrant. See State v. Holland, 744 A.2d 656, 661-62 (N.J.Super. 2000), and cases cited therein, appeal after remand, 176 N.J. 344, 352 (2003).