COMMONWEALTH *vs.* NILTON COSTA.

No. 04-P-1331.

Middlesex. September 15, 2005. - March 3, 2006.

Present: LENK, DUFFLY, & KATZMANN, JJ.

Further appellate review granted, 447 Mass. 1101 (2006).

*Constitutional Law,* Search and seizure, Stop and frisk. *Search and Seizure,* Reasonable suspicion. *Practice, Criminal,* Interlocutory appeal, Motion to suppress.

A Superior Court judge erred in allowing the criminal defendant's motion to suppress evidence that police had obtained via a patfrisk, where the police, acting on an anonymous telephonic tip that a teenager wearing certain clothing at an outdoor basketball game had lifted his shirt and revealed a gun underneath, had an objectively reasonable suspicion, based on specific, articulable facts, that the defendant was unlawfully carrying a firearm and displaying that firearm in a crowded venue, in that the informant placed her anonymity at risk by telephoning the police to report a crime in progress while standing near the defendant. [643-646]

INDICTMENTS found and returned in the Superior Court Department on November 7, 2002.

A pretrial motion to suppress evidence was heard by *Leila R. Kern,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Jessica Langsam,* Assistant District Attorney, for the Commonwealth.

*Karen Logee Swenson* for the defendant.

DUFFLY, J. With the consent of a single justice of the Supreme Judicial Court, the Commonwealth brings this interlocutory appeal from a Superior Court judge's allowance of a motion to suppress evidence. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). At issue is whether police acted permis-

sibly in stopping the defendant to conduct a patfrisk, in response to a telephonic tip that a teenager at an outdoor basketball game had lifted his shirt, revealing a gun underneath. We reverse the order allowing the motion to suppress.

*Summary of facts and proceedings.* We summarize the facts found by the motion judge, supplementing those findings with additional, uncontested background details from the record. Just before 7:30 P.M. on August 1, 2002, a State police emergency operator took a call placed by cellular telephone (cell phone) from an unidentified citizen. The State police system involved can identify a cell phone number, but not the name or exact location of the caller. The caller reported that she was at a park on the corner of Columbia and Washington Streets in Cambridge and had "just seen a kid with a gun underneath his T-shirt." The operator connected the female caller to the city of Cambridge 911 operator, Anneta Penta, stating, "I have a cell phone number of [telephone number], Ma'am, are you still on the line?" The caller said, "yes." Penta stated that the call was being recorded and asked her to describe the emergency. The caller again gave her location in Cambridge and said that she was at a basketball game. She said that she had "just seen one of the teenagers lift his shirt and seen a pistol in his pants." The caller described the teenager as wearing dungarees with red trim, a black shirt, and a blue baseball hat with red trim, and said that he was standing behind a car "on the corner of Columbia and Washington right now as I am talking to you and I just [inaudible] so when you all roll up there he'll know that I'm the one that called okay?" The caller could not identify the type of gun; Penta terminated the call and immediately dispatched the information to two units that responded to the call.

Cambridge police Officer Michael Regal[1] was nearby in a vehicle and arrived first. He testified that the location was called Columbia Park, Area 4, and had "always been a high crime area," where there was a lot of drug activity and where shootings had occurred in the past. Arriving at the scene within one and one-half minutes, Officer Regal observed three black

---

[1]Officer Regal was promoted to the rank of detective during the course of these proceedings.

males standing together near a fence at the corner of the park. One appeared to Officer Regal to be much younger than the others, seventeen or eighteen years old, nineteen at most[2]; the other two appeared to be at least twenty-five. The apparent teenager, later identified as the defendant, was wearing clothing fitting the description that Officer Regal had just heard via radio dispatch. The blue jeans worn by the other two did not have a red stripe, and their hats were of a different color. There were other people in the area watching the game, including families with children. Officer Regal got out of his vehicle and walked up to the defendant, ordering him not to move. He spread the defendant's arms and conducted a patfrisk; Officer Regal felt a hard, rough handle protruding from the waistband of the defendant's pants, which he thought might be a gun and which he removed. The object was a .22 caliber handgun, with one round in the chamber; the hammer was cocked and it was ready to be fired. As Officer Regal was conducting his inquiry, other officers arrived and confirmed that the defendant did not have a license to possess the gun. The defendant was arrested and taken to the police station. An officer conducting an inven-. tory of the police van that transported the defendant to the station found cash and what appeared to be a quantity of cocaine in several packages.

Thereafter, the defendant was indicted for possessing cocaine with the intent to distribute, second offense; doing so within one hundred feet of a public park; unlawful possession of a firearm, second offense; and possession of a firearm with a defaced serial number while committing a felony. The defendant moved to suppress the handgun, ammunition, fifteen pieces of (alleged) "crack" cocaine, a cell phone, a beeper, a wallet, and seventy dollars in cash. Following a hearing, the motion was denied and the defendant filed an application for interlocutory appeal. The Commonwealth opposed the application and filed a motion to supplement the evidence that had been presented at the hearing on the motion to suppress. This motion was al-

---

[2]The defendant was twenty-one years old on the date in question. As the motion judge found, after observing Costa, "[H]e does have a very youthful appearance. This court finds it credible that objectively Costa would have appeared to both the anonymous tipster and the police officer as a 'teenager.' "

lowed, and after a further evidentiary hearing, the defendant's motion to suppress was allowed.[3] The Commonwealth was given leave to file this interlocutory appeal from that ruling.

*Discussion.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). "Where police conduct an investigatory stop based on information gleaned from an anonymous tip, courts assess the sufficiency of the information in terms of the reliability of the informant and his or her basis of knowledge. . . . Where the information relied on to establish reasonable suspicion is transmitted by radio bulletin, both the source of the information and the basis of the source's knowledge must be demonstrated to be reliable." *Commonwealth* v. *Walker*, 443 Mass. 867, 872, cert. denied, 126 S. Ct. 662 (2005).

Police officers may act on the basis of a citizen report of apparent breaches of the peace that the citizen has observed, i.e., a tip, when the citizen has identified herself or has placed her anonymity at risk. The applicable law has been recently restated in *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 233-234 (2002), where we said that "[t]he face-to-face character of the citizen witness's contact with the police is significant, but it is not dispositive: if an in-person informant declines to identify himself, his report remains subject to the greater scrutiny given anonymous tips. . . . The guiding principle is whether the informant 'places his anonymity at risk.' Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 4-3(c)(2), at 4-26 (2001). If so, 'a court can consider this factor in weighing the reliability of the tip.' *Ibid.*" (Footnote omitted.) Cf. *Commonwealth* v. *Cox*, 56 Mass. App. Ct. 907, 909 (2002).

---

[3]After carefully considering the facts and legal authorities, the motion judge placed great weight on *Florida* v. *J.L.*, 529 U.S. 266, 271-273 (2000), in reaching her conclusion that, even if the defendant had been under the age of twenty-one years, "Regal would not have had reasonable suspicion that Costa was engaged in criminal activity if he [Regal] could not be confident that Costa was carrying a gun in the first place." As we discuss, *infra*, we think that under *Florida* v. *J.L.*, there were sufficient indicia of the tip's reliability here to justify the police stop and frisk of the defendant.

In this case, the number of the cell phone from which the citizen caller had placed her call was identified by the State police system, repeated out loud while the caller was on the line, and recorded. The citizen caller was not asked to identify herself; she did, however, give her location as standing close to the defendant, such that he might know she was placing the call if police arrived immediately on the scene. The caller placed her anonymity at risk, because the cell phone number could have been traced to the owner of the cell phone; she also was standing near the defendant as she placed the call, and police could have questioned those nearby had they wished to identify the caller. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 790-791 (1996) (information "provided by bystanders who could have been identified").

Even if the caller had borrowed the cell phone in order to place the call, she was potentially traceable through the owner of the cell phone. See, e.g., *Commonwealth* v. *Love*, *supra* at 230-232, 234 (where the citizen witness was a passenger in a car, the license plate number of which was recorded by a desk officer, the witness was "identifiable if not identified," and "potentially traceable"). This was not a "bare report of an unknown, unaccountable informant" as to which police were without the means to test the informant's basis of knowledge or credibility. *Florida* v. *J.L.*, 529 U.S. 266, 271 (2000).[4] As Justice Kennedy noted in his concurring opinion, the anonymous telephone tip in *Florida* v. *J.L.* did not justify a stop and frisk because the "record [did] not show whether some notation or other documentation of the call was made either by a voice rec-

---

[4]The facts in *Florida* v. *J.L.* are similar to the facts of the instant case, in this respect: there, an anonymous caller reported to police "that a young . . . male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Florida* v. *J.L.*, 529 U.S. at 268. There are additional facts present in this case that distinguish it from *Florida* v. *J.L.*: here the caller had, at the time of the call, personally observed the gun in the possession of the young male; the male appeared to be too young to legally carry a gun, see note 6, *infra*; police responded immediately to the call, see note 5, *infra*; the caller was standing near the defendant, and so could be questioned on arrival of police; the area in which the defendant was seen to be carrying a gun was a high crime area in which there had been shootings in the past; the gun had been displayed by the defendant in the vicinity of other people, including families with children; the caller could be traced through the telephone number from which the call was placed; and there was a record made of the call.

ording or tracing the call to a telephone number." *Id.* at 275 (Kennedy, J., concurring). Moreover, unlike in *Florida* v. *J.L.*, here police response to the call was immediate.[5] The fact that in the instant case a record was made of the call is also significant in that it "eliminat[es] the possibility of a police fabrication which is a principal concern in assessing the propriety of a threshold inquiry launched by an anonymous tip." *Commonwealth* v. *Lyons*, 409 Mass. 16, 20 (1990), quoting from *Commonwealth* v. *Anderson*, 366 Mass. 394, 399 (1974).

The caller in this case described a crime in progress — a teenager was in possession of, and displaying, a gun.[6] The circumstances required an immediate response from police, as the teenager was at a basketball game being attended by families, including children; police knew the location to be a high crime area where shootings had occurred in the past. Officer Regal, who was at the scene within one and one-half minutes, saw a teenager at the location described by the caller, wearing clothes that fit the description. At the time Officer Regal stopped the defendant, he had an objectively reasonable suspicion, based on specific, articulable facts, that the defendant was unlawfully carrying a firearm, see *Commonwealth* v. *Lyons*, 409 Mass. at 19, and displaying that firearm in a crowded venue. See *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671, 676-677 (2000) (officers with experience of shootings during after-hours parties on Armandine Street received information from a known bystander who, they could have inferred, had personal knowledge that one of the men seen on Armandine Street was

---

[5]In *Florida* v. *J.L.*, 529 U.S. at 268, officers were not instructed to respond until "[s]ometime after the police received the tip — the record does not say how long."

[6]It is illegal for anyone who is under twenty-one years of age to carry a firearm. G. L. c. 140, § 131. That the defendant had in fact turned twenty-one four months prior to the date he was stopped does not affect our analysis, as the motion judge clearly credited Officer Regal's testimony that the defendant appeared to be a teenager. See note 2, *supra*. Our analysis is unaffected by the Supreme Court's statement in *Florida* v. *J.L.*, 529 U.S. at 273 n.*, that "[e]ven assuming that the arresting officers could be sure that J.L. was under 21, they would have had reasonable suspicion that J.L. was engaged in criminal activity only if they could be confident that he was carrying a gun in the first place." As we have discussed, what was missing in *Florida* v. *J.L.* was any indicia of the tip's reliability, which would have given the police the requisite confidence that the defendant possessed a gun. That reliability is present here.

displaying a gun; officers acted reasonably when they pat frisked the men, believing them to be armed and dangerous), and cases cited therein.

*Conclusion.* Based on the foregoing, the order of the Superior Court allowing the motion to suppress evidence obtained in the investigatory stop is reversed.

*So ordered.*