Lu, JohnT., J.
INTRODUCTION
The defendant, Devon McLeod (McLeod), moves to suppress items seized when Worcester Police executed a search warrant at 13 Douglas Street, Apt. #1 in Worcester on January 25, 2006. McLeod claims that the information in the search warrant application was stale, that the application for the search warrant did not establish probable cause, and that the items sought by police were not described with particularity. The Commonwealth responds that the information was not stale due to the nature of the items, that the magistrate made reasonable inferences based on the information in the affidavit, thus properly finding probable cause, and that the items were described as specifically as circumstances allowed.
Finding that the affidavit supporting the application for the search warrant established probable cause but failed to identify the jewelry sought with particularity, or to excuse this shortcoming, the court allows the motion to suppress as to the jeweliy and denies the motion as to all other items.
*11 THE AFFIDAVIT
On January 25, 2006, Worcester Police Officer Mark Sawyer (Sawyer) submitted an application for a search warrant to the Worcester District Court that included the following information.
On November 21, 2005, a shooting and armed robbery occurred at the A-1 Pawn Shop at 240 Shrews-bury Street in Worcester during which the owner was shot three times; he remained hospitalized at the time of the application. A store clerk was shot twice but had been released from the hospital. A large amount of jewelry and several hundred dollars in cash were taken, detectives from the Crime Scene Unit processed the scene and recovered several .380 caliber shell casings and .380 shell projectiles.
Later that day, Nathan Benson (Benson) was arrested for the shooting and robbery at the pawn shop. Benson confessed to the shooting and implicated two other persons that he said participated in the robbery, one as a lookout and the other as a getaway driver. Benson said that the two individuals got jewelry and cash in return for their assistance.
The driver of the vehicle used in the robbery was later identified as Ricardo Maisonet (Maisonet). Benson said that he did not know the name of the person that acted as the lookout because he had only been introduced to him one or two hours before the robbery. Maisonet knew him and contacted himbecause he had access to firearms. Before the robbery, Benson and Maisonet picked him up at the comer of Grand and Southgate Streets because he did not want to be picked up at his house. Benson said that he was a black male with dark skin, in his late teens to early twenties, with braided hair, and that he wore a dark blue hooded sweatshirt. He entered the vehicle with two handguns, one black and one chrome, handed one to Benson and kept one for himself. He called the guns “the twins.” He stayed outside the front door of the pawn shop while Benson was inside committing the robbery.
On December 7, 2005, Maisonet was arrested and charged with robbery. On January 5, 2006, Sawyer and Detective Lieutenant Thomas Gaffney interviewed Maisonet. Maisonet said that the third individual involved in the robbery was a male named Devon. Maisonet also said that when he and Benson picked up Devon, he got in with two handguns, one chrome and one black. Maisonet looked at a photo array, consisting of eight black and white photos of men with similar physical characteristics; he selected the photo of Devon McLeod (McLeod) as the person who assisted with the robbery.
On January 20, 2006, a named witness provided a detailed, signed statement to police regarding the robbery. The witness’s name was kept confidential due to the violent nature of the crime and for the witness’s safety. The witness said that he saw McLeod with Benson and Maisonet dividing up a large amount of jewelry, within an hour of the robbery.
Four years before the robbery, on February 4, 2002, a shooting occurred on North Street in Worcester and McLeod was arrested and charged. Statements from named witnesses indicated that McLeod had two .380 caliber handguns, one chrome, and one black. McLeod served jail time for that case and is on parole until December 23, 2006.
McLeod’s parole officer conducted several contact visits with him at 13 Douglas Street, Apt. #1 in Worcester. The parole officer also had a scheduled visit with McLeod on January 26, 2006 at the same address. Wendy’s Restaurant in Worcester employed McLeod and the address he listed with Wendy’s was 13 Douglas Street, Apt. #1. This address is within two blocks of where Benson and Maisonet picked up the lookout.
DISCUSSION
I. Probable Cause
“To establish probable cause to obtain a search warrant, the affidavit must ‘contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched.’ ” Commonwealth v. O’Day, 440 Mass. 296, 300 (2003), quoting Commonwealth v. Cefalo, 381 Mass. 319, 328 (1980).
a. Staleness
McLeod argues that the information supporting the issuance of the warrant was stale because the length of time between the robbery and the search was more than two months. In considering staleness in the context of a probable cause determination, the “affidavit need not demonstrate that the items sought are in fact on the defendant’s premises at the time, but need only provide the issuing magistrate with a substantial basis for concluding that any of such articles is probably there.” Commonwealth v. Blye, 5 Mass.App.Ct. 817 (1977), further app. rev. denied, 372 Mass. 872 (1977) (four-month delay acceptable where the items were chainsaws and there was evidence of a continuing criminal enterprise). Although the lapse of time involved is important, it is not necessarily the controlling factor. Commonwealth v. Fleuran, 2 Mass.App.Ct. 250, 254-55 (1974). Courts must also look to the consumability and incriminating nature of the stolen properly. Id. at 255.
The items described in the search warrant were handguns, ammunition, jewelry, and a sweatshirt. These are all durable items that were likely to be retained by McLeod. The sweatshirt and jewelry are not incriminating in themselves such that one would want to dispose of them quickly in order to escape prosecution. Gun owners usually keep them on their person or in their homes. Massachusetts courts have *12 distinguished cases concerning one-time observations of drugs where the information will quickly become stale with those involving guns. “Unlike drugs or liquor, a collection of weapons is not likely to be consumed or destroyed.” Id. at 255.
McLeod used guns in the pawn shop robbery that looked like the guns he used in a 2002 shooting, for which he served time and was still on parole. He called the guns “the twins”; his use of a nickname suggests that he had an unusual attachment to them. If he had affection for his guns, and did not dispose of them after using them in a shooting for which he did time and was on parole, he was not likely to dispose of them after the most recent robbery, one for which he likely thought he had evaded prosecution.
McLeod’s staleness argument fails for another reason; some of the information establishing probable cause was much less than two months old, including the interview of Ricardo Maisonet at the Worcester County House of Correction.
b. Nexus
Probable cause to believe evidence of criminal activity will be found in a particular place must be demonstrated by a “nexus” between the crime alleged and the place to be searched. Commonwealth v. Jean-Charles, 398 Mass. 752, 757 (1986). In order to determine whether the nexus exists, the court looks at the allegations in the affidavit as a whole in a common sense fashion, not at individual parts of the affidavit. Commonwealth v. Atchue, 393 Mass. 343, 346-49 (1984). The nexus “need not be based on direct observation.” Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). It may be found based on the type of crime, the nature of the items sought, and normal inferences as to where such items might be kept by the suspect. Id.
McLeod argues that the affidavit does not establish a nexus between the items sought and his apartment at 13 Douglas Street. McLeod’s parole officer had met him there, had future appointments to meet him there, and his employer had that address on file. He was picked up within two blocks from 13 Douglas Street after stating he did not want to be picked up at his home. The affidavit established a nexus between the items and 13 Douglas Street, Apt. #1.
c. The “named witness”
In Commonwealth v. Upton, the Supreme Judicial Court concluded that Article 14 provides more substantive protection for criminal defendants than does the Fourth Amendment in the determination of whether information from anonymous informants establishes probable cause. 394 Mass. 363, 373 (1985). The Court adopted the Aguilar-Spinelli test for purposes of probable cause inquiries under Article 14. Id. at 374. If an affidavit is based on information from an unknown informant, the magistrate must “be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was ‘credible’ or his information ‘reliable’ (the veracity test).” Aguilar v. Texas, 378 U.S. 108, 114 (1964). If the informant’s tip does not satisfy each aspect of the Aguilar test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. Spinelli v. United States, 393 U.S. 410, 415 (1969). Each prong of the test must be separately considered and satisfied. Id. at 376.
The “basis of knowledge” prong is satisfied here through the personal observations of the named witness. Id. citing Commonwealth v. Allen, 406 Mass. 575, 578 (1990) (“The basis of the informant’s knowledge appeared within the tip itself’). The named witness personally observed Benson, Maisonet, and McLeod dividing up a large amount of jewelry and heard McLeod say, “the gun shots were loud from shooting through the glass case.” The named witness described McLeod as wearing a black hood and having braids. The named witness had a sufficient basis of knowledge.
Hearsay statements from citizens who are eyewitnesses to-a crime, who furnish information to the police, or who are victims are not subject to the same test that governs other informants. See Commonwealth v. Peterson, 61 Mass.App.Ct. 632, 634 (2004), further app. rev. denied, 442 Mass. 1111 (2004) (relatives of the defendant, whose names and addresses were known to the police provided information, which was deemed reliable); Commonwealth v. Morrison, 429 Mass. 511, 515 n.3 (1999); Commonwealth v. Alvarado, 427 Mass. 277, 283 (1998) (information was provided by disinterested citizen, who identified himself and relayed his personal observations to the police); Commonwealth v. Butterfield, 44 Mass.App.Ct. 926, 927 (1998) (information from an “ordinary, known citizen”); Commonwealth v. White, 44 Mass.App.Ct. 168, 172 (1998), further app. rev. denied, 427 Mass. 1103 (1998) (information provided by bystanders who could have been identified, thus reducing to some extent the likelihood of fabrication); Commonwealth v. Welch, 420 Mass. 646, 652 n.4 (1995) (“information supplied to the police by citizens is not subject to the same scrutiny as that supplied by unnamed police informants”). Under these circumstances, the strict requirements that govern a tip from an anonymous informant are relaxed. Commonwealth v. Love, 56 Mass.App.Ct. 229, 232 (2002), further app. rev. denied, 438 Mass. 1103 (2002).
The reliability test can be satisfied even if the witness is not identified, provided that the witness is identifiable by the police. Love at 232. Although the “guiding principle is whether the informant places his *13 anonymity at risk,” id. at 234, the witness was not identified in the affidavit. On the other hand, the witness provided police with a detailed signed statement regarding the robbery, was readily identifiable to the police and had put his anonymity at some risk. Although the informant was identified to police, no further information is provided such as that the informant was a bystander or neighbor, that would allow the magistrate to evaluate the informant’s reliability. Id. at 233. On balance, the court declines to give this information significant weight.
II. Particularity
“Search warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for.” G.L.c. 276, §2. The document must sufficiently limit the discretion of the executing officers so that reference by them to that document makes a “general search under it impossible and prevents the seizure of one thing under a warrant describing another.” Marron v. United States, 275 U.S. 192, 196 (1927). Article 14 of the Massachusetts Declaration of Rights requires a “special designation of the . . . objects of search . . ..or seizures” which “both defines and limits the scope of the search and seizure, thereby protecting individuals from general searches ...” Commonwealth v. Pope, 354 Mass. 625, 629 (1968). Even a “warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit.” United States v. Robertson, 21 F.3d 1030, 1033 (1994).
Generally the burden of establishing that evidence is illegally obtained is on the defendant when the search is under a warrant. Commonwealth v. Antobenedetto, 366 Mass. 51, 56-57 (1974). However, in Commonwealth v. Taylor, the Appeals Court held that the Commonwealth bears the burden of persuasion when a warrant is attacked as invalid. 10 Mass.App.Ct. 452, 455 (1980).
The guns, ammunition, and hooded sweatshirt were instrumentalities of the crime .and were sufficiently described in the warrant. McLeod argues that the search warrant contained nothing specific about the jewelry sought, and that the warrant was defective for lack of particulariiy.
In Commonwealth v. Taylor, the Supreme Judicial Court held that a warrant authorizing a search for “antique jewelry” in a jewelry store did not meet the particularity requirement. Id. at 275. In Taylor, the particularization was available but was not provided in the warrant. Id. at 276. Similarly, in Commonwealth v. Rutkowski, 406 Mass. 673 (1990), the Supreme Judicial Court held that a description of “handguns, jewelry, and coins which [were] more specifically detailed in the attached list which was attached [thereto] and incorporated [therein]” lacked sufficient particularity to meet the requirements of Article 14, and G.L.c. 276, §2. Id. at 674. The affidavit and its descriptive attachments were not attached to the warrant and the Supreme Judicial Court stated, “this case is not one in which stolen items could not have been described in more detail.” Id. at 676.
In Lockridge v. Superior Court of Los Angeles County, cited by the Supreme Judicial Court in Taylor, the California appellate court held that a warrant calling for the seizure of merchandise stolen from a jewelry store was invalid on its face because of its failure to describe the jewelry with particularity. 275 Cal.App.2d 612, 625-26 (1969). The State of California had not advanced any reason why an inventory list had not been obtained nor incorporated in or attached to the warrant. Id. Much like this case, in which two months had elapsed since the robbery, the Lockridge court stated there was no showing that a similar inventory of the store could not have been obtained in the more than two months preceding the issuance of the warrant. Id.
Sawyer provided no information in the affidavit about why an inventory list had not been obtained, for example, that obtaining a list of the stolen jewelry would have been impossible or even difficult. The recitation that the store owner was still hospitalized at the time Sawyer applied for the warrant does not resolve the issue because the store owner’s hospitalization at the time of the application for the warrant does not mean that the pawn shop was closed. There may have been employees running the store while the owner recovered from injuries that could have provided the police with an inventory of stolen items. Two months had passed from the robbery to the date of the search warrant application; there was ample time for the police to find out what had been stolen from the employee released from the hospital or for police to explain why they had not been able to do so. The Commonwealth has not met its burden of showing that the seizure of the jewelry was justified within the four corners of the warrant. The jewelry must be suppressed.
A finding of overbreadth regarding the use of the generic term “jewelry” does not require suppression of all of the items seized pursuant to the warrant. United States v. Blakeney, 942 F.2d 1001, 1027 (1991).
ORDER
Devon McLeod’s motion to suppress the fruits of a search pursuant to a search warrant is ALLOWED as to the jewelry seized from Devon McLeod’s apartment. Otherwise, the motion to suppress is DENIED.