## Commonwealth *vs.* James J. Murdough.

No. 97-P-1368.

Franklin. February 5, 1998. - May 12, 1998.

Present: Brown, Porada, & Spina, JJ.

Further appellate review granted, 428 Mass. 1102 (1998).

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Automobile, Expectation of privacy. *Constitutional Law,* Search and seizure.

State police officers acted reasonably in approaching and inquiring as to the condition of the defendant, who was apparently asleep in an automobile which had been parked with the engine off in a highway rest area for more than one and one-half hours on a cold day in January, and, when the defendant became incoherent and lapsed into sleep in the middle of the conversation, the officers had an objective basis for believing that the defendant's safety and well-being were in jeopardy and were warranted in waking the defendant and asking him to step out of the vehicle to further evaluate his condition: physical evidence which came into plain view as the defendant stepped out of the vehicle was properly admissible and should not have been suppressed as evidence. [738-740]

Complaint received and sworn to in the Greenfield Division of the District Court Department on January 6, 1997.

A pretrial motion to suppress evidence was heard by *Herbert H. Hodos,* J.

An application for an interlocutory appeal was allowed by *Charles Fried,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Francis L. McDonald & Joseph T. Gorman* for the defendant.

Spina, J. A single justice of the Supreme Judicial Court granted the Commonwealth's application for interlocutory review of a District Court judge's order suppressing controlled substances which came into plain view as a result of the defendant stepping out of a car at the request of State police of-

ficers investigating his condition pursuant to their caretaking function. The single justice transferred the appeal to this court pursuant to Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979). On appeal, the Commonwealth claims error in the judge's conclusion that the State police officers "went beyond the caretaking function [of assisting a disabled person] and were looking for evidence of a narcotics violation." We reverse.

In reviewing the determination of a motion to suppress physical evidence seized without a warrant, we accept the judge's subsidiary findings when based upon oral testimony, absent clear error. *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990). We exercise independent judgment on constitutional issues. *Commonwealth* v. *Robbins,* 407 Mass. 147, 151 (1990).

We summarize the facts found by the judge. At about 8:00 A.M. on January 5, 1997, Troopers Michael Volpe and Thomas Fitzgerald (who was in training) were traveling north on Interstate 91 in Whately. They noticed several cars at a rest area, including a red Mercury Capri. About one and one-half hours later, as they were driving past the same rest area, the troopers noticed that the Capri was in the same spot, and that there were no other vehicles at the rest area. Its brake lights were on.[1] The troopers entered the rest area to check on the well-being of the car's occupants.

They noticed the defendant alone in the car, seemingly asleep. The windows were up. The day was cold. Trooper Fitzgerald knocked on the driver's window a few times, but received no response. After two to three minutes of knocking, the defendant awoke, rolled down his window and asked what they wanted.[2] He appeared disheveled, and was not wearing shoes. When asked to produce his license and registration, the defendant showed a valid license, but was unable to find the registration. Trooper Fitzgerald asked him who owned the car, and the

---

[1]The troopers and the defendant testified the engine was not running.

[2]Both troopers testified that they asked the defendant if he was okay. The defendant acknowledged that the troopers asked if he had a medical condition.

defendant replied, "Scott."[3] As Fitzgerald was talking to him, the defendant became incoherent and fell asleep.[4]

Concerned about his condition, the troopers again woke the defendant and asked him to get out of the vehicle. They did so because of "possible medical problems" and because they "thought that the Defendant might have been on a narcotics bender and . . . fresh air might do him good." Once roused, the defendant appeared dazed. He was unsteady on his feet after stepping out of the car. Some cocaine and marihuana, previously obstructed from view by the defendant's position in the car, came into plain view after he left his seat. The troopers then placed the defendant under arrest for possession of narcotics, and seized the drugs.[5]

In ordering the evidence suppressed, the judge concluded:

> "I am of the opinion that the troopers went too far at the time the Defendant was told to get out of the car . . . . [H]e had given the officers his license and told them that he didn't have a registration but identified the owner as Scott. There was no evidence produced that the troopers even inquired as to the defendant's health or the need for aid at this time. The troopers had a hunch that he was under the influence of a narcotic and had him exit the car. At this point they went beyond the caretaking function and were looking for evidence of a narcotics violation."

Police encounters with citizens are not limited to criminal investigations or the exercise of regulatory duties. Some encounters may occur simply when a citizen is in need of assistance, as part of an officer's "community caretaking functions." *Cady* v. *Dombrowski*, 413 U.S. 433, 441 (1973). "The Commonwealth . . . has a strong interest in protecting the

---

[3]The judge found that the troopers confirmed that the car was owned by one Scott LaBelle, but he made no findings as to when that occurred. Trooper Fitzgerald testified that they checked the registration after the defendant was arrested. The transcript indicates that both the defendant and Trooper Fitzgerald testified that the car was owned by one Scott Debell.

[4]The defendant testified that he was disoriented throughout the incident, and was shivering from the cold.

[5]There is no claim that the troopers searched the car before finding the drugs. The defendant contends that the troopers had no authority to ask him to step out of the car, and that the drugs seized must be suppressed as the fruits of that illegality because they were not exposed to plain view until the defendant complied with that request.

public from . . . potentially life threatening hazards" posed by winter weather, including "freezing to death in a disabled vehicle." *Commonwealth* v. *King*, 389 Mass. 233, 242 (1983). Nevertheless, "[t]he investigatory check of a parked vehicle during winter months, regardless of its limited purpose and brevity, is an intrusion on privacy rights," and must be reasonable within the meaning of the Fourth Amendment to the United States Constitution. *Id.* at 241. This "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Since the day was cold, the car had been in the same spot for more than one and one-half hours, and the defendant was seemingly asleep with no heat source in the car, the troopers properly approached and inquired as to his condition, and the judge so found. Compare *Commonwealth* v. *King*, *supra* at 241-243. See also *Commonwealth* v. *Leonard*, 422 Mass. 504, cert. denied, 519 U.S. 877 (1996).

Contrary to the judge's conclusion that the officers should have ended their investigation with the defendant's responses to their questions about his license and registration, they were warranted in continuing their investigatory check. The defendant appeared to be under a disability, having become, as the judge found, incoherent, then lapsing into sleep in the midst of conversation. Contrast *Commonwealth* v. *Loughlin*, 385 Mass. 60 (1982); *Commonwealth* v. *King*, *supra* at 244. Compare *Commonwealth* v. *St. Hilaire*, 43 Mass. App. Ct. 743 (1997). Accepting the judge's findings regarding the defendant's condition, the troopers had an objective basis for believing that the defendant's safety and well-being were in jeopardy. In those circumstances, they acted reasonably by waking the defendant and asking him to step out of the car to further evaluate his condition. They probably had no alternative. See *Commonwealth* v. *Leonard*, 422 Mass. at 509. See also *Commonwealth* v. *Vasquez*, 426 Mass. 99, 102 (1997).

The measure of the Fourth Amendment here is whether the troopers acted reasonably. The mere fact that, as the judge found, "in the back of their minds" they thought the defendant was under the influence of a narcotic, did not invalidate their right to check his condition. As the judge also found, they were also mindful that the defendant might require medical attention. The troopers' consideration of the likelihood that the defendant's

condition may have been brought about by the use of illegal drugs lessened neither his need for assistance, nor their duty to provide it. The Supreme Court has "never held, outside the context of inventory search or administrative inspection . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but [it has] repeatedly held and asserted the contrary." *Whren* v. *United States*, 517 U.S. 806, 812 (1996). Compare *Commonwealth* v. *Santana*, 420 Mass. 205, 209 (1995). See Smith, Criminal Practice and Procedure § 240, at 177 (2d ed. 1983); LaFave, Search and Seizure § 1.4(e), at 115 (3d ed. 1996).[6]

The order allowing the motion to suppress is reversed and this matter is remanded to the District Court in accordance with this opinion.

*So ordered.*

---

[6]In these circumstances, the rights afforded under art. 14 of the Massachusetts Declaration of Rights are coextensive with those under the Fourth Amendment. *Commonwealth* v. *Leonard*, 422 Mass. at 506 n.1.