Commonwealth *v.* Murdough.

COMMONWEALTH *vs.* JAMES J. MURDOUGH.

Franklin. January 4, 1999. - February 1, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Automobile, Probable cause, Plain view. *Probable Cause. Constitutional Law,* Search and seizure.

State police officers properly approached and inquired as to the condition of the defendant, who was apparently asleep in an automobile which had been parked with the engine off in a highway rest area for more than one and one-half hours on a cold day in January, and, when the defendant became incoherent and lapsed into sleep in the middle of the conversation, the officers had an objective basis for believing that the defendant's safety and well-being were in jeopardy and were warranted in waking the defendant and asking him to step out of the vehicle to further evaluate his condition: physical evidence which came into plain view as the defendant stepped out of the vehicle was admissible and should not have been suppressed as evidence. [762-765]

COMPLAINT received and sworn to in the Greenfield Division of the District Court Department on January 6, 1997.

A pretrial motion to suppress evidence was heard by *Herbert H. Hodos*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

*Francis L. McDonald & Joseph T. Gorman*, for the defendant, submitted a brief.

FRIED, J. A judge of the District Court granted the defendant's motion to suppress evidence that came into plain view when a police officer, believing that the defendant might be under the influence of narcotics, ordered him to step out of his parked vehicle. The Appeals Court reversed, ruling that the police officer's order was reasonable in the circumstances. *Commonwealth* v. *Murdough*, 44 Mass. App. Ct. 736, 740 (1998).

We granted the defendant's application for further appellate
review and reverse the judgment of the District Court.

I

The defendant was parked alone in a rest area of an interstate
highway on a bright, cold January morning. Two State troopers,
who had seen the same vehicle earlier that morning, pulled into
the rest area. The defendant's was the only vehicle in the rest
area. The officers noticed that the vehicle's brake lights were on
and that the defendant was asleep. The officers both approached
the vehicle and one of them knocked on the window several
times. It required two or three minutes of knocking before the
defendant awoke, rolled down his window and asked what the
officers wanted. The defendant was disheveled and was not
wearing shoes. He was asked to show his license and registra-
tion. He produced a valid license, but said he did not know
where the registration was. When asked who owned the vehicle,
the defendant answered, "Scott." By checking the registration
plate, one of the officers confirmed that the registered owner's
first name was Scott, but the judge did not find when this was
ascertained. While the officer was talking to him, the defendant
became incoherent and fell asleep. The officer again awakened
him and told him to get out of the vehicle. The defendant was
unsteady and appeared dazed. As the defendant got out of the
vehicle, some marihuana and cocaine came into plain view. The
defendant was arrested for possession of controlled substances,
and the marihuana and cocaine were seized. The defendant
moved to suppress the narcotics.

The motion judge found that:

> "The Troopers testified that they stopped at the rest area
> and approached the [vehicle] the second time for a 'well
> being' check. They asked the Defendant to get out of the
> vehicle for possible medical problems and in the back of
> their minds was the thought that the Defendant might have
> been on a narcotics bender and thought the fresh air might
> do him good.

> "I find that they in fact had a hunch that the Defendant
> had used narcotics and that they would find evidence when
> he exited the vehicle."

The motion judge went on to conclude that our decision in

*Commonwealth* v. *Leonard*, 422 Mass. 504, cert. denied, 519 U.S. 877 (1996), "[p]erhaps . . . in this case justifies the troopers' initial approach of the vehicle and having conversation with the Defendant on the grounds that he might have been ill or in some other kind of difficulty, but I am of the opinion that the troopers went too far at the time the Defendant was told to get out of the car so that his rights were violated at this time . . . . There was no evidence produced that the troopers even inquired as to the Defendant's health or the need for aid at this time. The troopers had a hunch that he was under the influence of a narcotic and had him exit the car. At this point they went beyond the caretaking function and were looking for evidence of a narcotics violation."

The Appeals Court reversed. 44 Mass. App. Ct. 736 (1998). In its recital of the facts, the court stated that the officers asked the defendant to get out of the vehicle because they were "[c]oncerned about his condition . . . . They did so . . . because they 'thought that the defendant might have been on a narcotics bender and fresh air might do him good.' " *Id.* at 738. Applying our decision in the *Leonard* case and the Supreme Court's decision in *Cady* v. *Dombrowski*, 413 U.S. 433 (1973), the Appeals Court held that the officers, as part of their "community caretaking functions," *id.*, quoting *Cady* v. *Dombrowski*, *supra* at 441, had acted reasonably. "Accepting the judge's findings regarding the defendant's condition, the troopers had an objective basis for believing that the defendant's safety and well-being were in jeopardy." *Commonwealth* v. *Murdough*, *supra* at 739. The Appeals Court concluded that, because the officers' actions were reasonable in light of this objective basis, those actions violated neither the Fourth Amendment to the United States Constitution nor art. 14 of the Massachusetts Declaration of Rights, which in this respect are coextensive. *Id.* at 740 & n.6. Citing the recent decision of the Supreme Court in *Whren* v. *United States*, 517 U.S. 806, 812 (1996), the Appeals Court added that "an officer's motive [does not] invalidate[] objectively justifiable behavior." *Id.* at 740.

## II

The Appeals Court's analysis is correct.

The defendant complains that the Appeals Court substituted its own view of the facts for those of the motion judge, who heard the testimony and saw the witnesses. While the defendant

is quite right that the findings of the motion judge are owed deference on appeal, *Commonwealth* v. *Murphy*, 362 Mass. 542, 547 (1972), the Appeals Court did not violate that principle here. First, an appellate court can have no obligation to defer to a judge's finding that is incorrect on its face. The motion judge stated in his findings that "[t]here was no evidence produced that the troopers even inquired as to the Defendant's health or the need for aid at this time." But the record plainly contradicts that statement. One of the officers testified that he asked the defendant "if he was okay," and the other officer testified that they first had asked the defendant "if he was on any type of medication or narcotics." Moreover, one of the officers also testified that at the time they asked the defendant to step out of the vehicle, they were concerned "that he had some type of medical condition."[1] The judge need not have believed this testimony, but he was incorrect to state that no such evidence had been produced.

But even on the facts as found, the motion to suppress should not have been granted. The judge's analysis was mistaken. First, he assumed that the officers were required to have some reasonable basis for their initial approach and inquiry, but it is quite clear that officers may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries. See *Florida* v. *Bostick*, 501 U.S. 429, 434 (1991); *Florida* v. *Royer*, 460 U.S. 491, 497 (1983); *Terry* v. *Ohio*, 392 U.S. 1, 16 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person"). Cf. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 227 (1973) (consent search valid in absence of probable cause). Officers may not engage in an investigatory stop or brief detention except on reasonable suspicion. See *Terry* v. *Ohio*, *supra*. There must be probable cause to arrest. But it would introduce an altogether new and disastrous complication to require some preliminary showing of need or reasonableness to justify an entirely noncoercive inquiry. And if the police, in pursuing their inquiries, may knock on any door, they may also knock on any vehicle window without having to explain why, should that initial, noncoercive inquiry ripen into something

---

[1]The defendant testified that before the officer asked him to step out of the vehicle, he asked whether the defendant was "an IV drug user" and why the defendant was shivering. He did not recall being asked any other questions.

more, as it did here. Thus, it was clear in the *Leonard* case that the officer's initial approach to the parked vehicle and the officer's knocking on the window raised no constitutional issue at all. It was only when the officer opened Leonard's door that a justification for that action had to be offered. In contrast, in *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998), the officer's approach required justification because he had first activated his blue lights, which clearly indicated to the driver of the parked vehicle that he was not free to go.[2] The point at which a constitutional question first arose in this case was when the defendant was told to get out of his vehicle.

The judge noted, and the record reflects, that the officers suspected that the defendant was under the influence of narcotics. It is not a crime to be under the influence of narcotics, although certainly it is a crime to operate a motor vehicle while under such influence. And operation of a vehicle when in a narcotic stupor presents a danger to the driver and to the public. If the community caretaking function, to which both the judge and the Appeals Court refer, means anything, surely it allows a police officer to determine whether a driver is in such a condition that if he resumes operation of the vehicle, in which he is seated at a highway rest stop, he will pose such an extreme danger to himself and others. The officers testified that they asked the defendant to step out of the vehicle to be able further to observe his condition and because they thought that the cold air would sober him up. The judge suppressed the evidence that came into plain view as the defendant stepped out of the vehicle because he concluded "they went beyond the caretaking function and were looking for evidence of a narcotics violation." Nothing better illustrates the good sense of the *Whren* rule. If the judge had believed the officers' stated reasons, then their action could only be viewed as eminently reasonable. But the judge did not believe the officers' stated reasons. Or, rather, he thought that they had an ulterior motive as well, because in his

---

[2]If the defendant had continued to ignore the officers' inquiry or had refused to produce a license and registration and the officers had chosen to take this recalcitrance as a justification for more intrusive action, a different set of questions would arise. Such recalcitrance alone may not, but together with other circumstances may, justify a brief investigatory detention. See, e.g., *Commonwealth* v. *Silva*, 366 Mass. 402, 406-407 (1974); *Commonwealth* v. *Torres*, 40 Mass. App. Ct. 6, 9 (1996). Also, G. L. c. 90, § 25, provides a penalty for the refusal of a person in control of a motor vehicle to produce his driver's license to a police officer on the officer's request.

findings he also concluded that "[t]hey asked the Defendant to get out of the vehicle for possible medical problems and in the back of their minds was the thought that the Defendant might have been on a narcotics bender and thought the fresh air might do him good." The judge did see and hear the witnesses; we have only the record. But there is nothing at all in that record to suggest that the police officers were not acting for precisely the reason stated — except a generalized, free-floating suspicion. *Whren* v. *United States*, 517 U.S. 806 (1996), teaches that, if the objective circumstances justify the action taken, that is enough. That is the sounder rule and certainly invites less unanchored guesswork on the part of a motion judge.

The order allowing the motion to suppress is reversed.

*So ordered.*