COMMONWEALTH *vs.* TIMOTHY P. GAYLARDO. No. 06-P-500. February 7, 2007. *Search and Seizure,* Threshold police inquiry. *Threshold Police Inquiry. Practice, Criminal,* Motion to suppress, Interlocutory appeal.

This is the Commonwealth's appeal from the allowance by a District Court judge of the defendant's motion to suppress evidence. We reverse.

A police officer driving by a parking lot at about 2:38 A.M. on a winter night noticed a car with a person, later determined to be the defendant, sitting alone in the driver's seat. The car's headlights and interior lights were on, the engine was running, and the driver's-side door was open. The officer pulled his cruiser behind the car and approached on foot. When his observations led the officer to conclude that the defendant was intoxicated, he arrested the defendant and charged him with operating a motor vehicle while under the influence of alcohol, third offense.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). See *Commonwealth* v. *Rogers,* 444 Mass. 234, 235 n.2 (2005) ("Although the judge's findings are 'binding in the absence of clear error,' we may reexamine his conclusions of law"). See also *Commonwealth* v. *Baptiste,* 65 Mass. App. Ct. 511, 514-515 (2006). Here, the judge's subsidiary findings clearly establish behavior objectively justifiable as community caretaking; the judge's conclusion that the officer had seized the defendant without a lawful basis was error.[1]

Not every interaction between police officers and citizens requires judicial justification. "Local police officers are charged with 'community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *Commonwealth* v. *Evans,* 436 Mass. 369, 372 (2002), quoting from *Cady* v. *Dombrowski,* 413 U.S. 433, 441 (1973). Our appellate courts have "recognized that some of these functions include allowing police officers to check on motorists parked in a rest area, . . . and allowing an officer to open the unlocked door of a vehicle parked in a breakdown lane to ascertain the motorist's need for assistance." *Commonwealth* v. *Evans, supra* at 372-373, citing *Commonwealth* v. *Murdough,* 428 Mass. 760, 764 (1999), and *Commonwealth* v. *Leonard,* 422 Mass. 504, 508-509, cert. denied, 519 U.S. 877 (1996). Nor is questioning by

---

[1]The motion judge did not find that the officer had activated the blue lights on his police cruiser when he approached the parked car, and the evidence supports a conclusion that he had not. Even if the lights had been activated, our conclusion would be the same. See *Commonwealth* v. *Leonard,* 422 Mass. 504, 508, cert. denied, 519 U.S. 877 (1996); *Commonwealth* v. *Evans,* 436 Mass. 369, 372 (2002). Compare *Commonwealth* v. *Smigliano,* 427 Mass. 490, 491-492 (1998).

officers performing a well-being check "colloquially understood as interrogation — it is not commonly understood as related to the investigation or prosecution of a crime." *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 9 (2005), cert. denied, 126 S. Ct. 2982 (2006). See *Commonwealth* v. *King*, 389 Mass. 233, 242 (1983) ("limited and focused inspection of a vehicle to determine whether assistance or aid is required is a minimal intrusion on the occupant's, or owner's, expectation of privacy").

"[T]he community caretaking function is implicated if there is an objectively reasonable basis for believing that the safety of an individual or the public is jeopardized." *Commonwealth* v. *Brinson*, 440 Mass. 609, 615 (2003). It is of no consequence that the officer did not indicate that his approach was in the role of a community caretaker or that he referred to his inquiry as a "stop." The officer's "subjective belief, even a compelling one, that the operator was engaged in illegal behavior does not affect our decision." *Commonwealth* v. *McDevitt*, 57 Mass. App. Ct. 733, 736 (2003). See *Commonwealth* v. *Murdough*, 428 Mass. at 762 (officer's motive does not invalidate objectively justifiable behavior).

Here, the officer had an "objectively reasonable basis for believing that the safety of an individual or the public is jeopardized." *Commonwealth* v. *Brinson, supra*. The facts that it was late at night in February and had recently snowed when the officer observed the defendant alone in a car parked in front of a closed business, with the engine running, lights on, and door open, permitted the officer to conduct a well-being check in order to ascertain the defendant's condition. See *Commonwealth* v. *King, supra* at 242 ("Winter weather presents unique hazards to the driving public, e.g., carbon monoxide poisoning from the vehicle's heater, freezing to death in a disabled vehicle, and frozen gasoline lines or snowstorms causing disabled vehicles"); *Commonwealth* v. *Murdough, supra* (police permitted to inquire about physical condition of driver asleep while parked at rest area in cold weather); *Commonwealth* v. *Lubiejewski*, 49 Mass. App. Ct. 212, 216 (2000) (reasonable suspicion of criminal activity not required "to check on motorists parked in rest areas, especially in winter").

Because the arrest arose out of evidence (the officer's observations that the defendant appeared to be intoxicated) that came to light during the course of an appropriate exercise of the officer's community caretaking role, the order allowing the motion to suppress is reversed.

*So ordered.*

*David F. O'Sullivan*, Assistant District Attorney, for the Commonwealth.
*Robert H. D'Auria* for the defendant.