NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-837                                              Appeals Court

COMMONWEALTH  vs.  CYRUS S. FISHER.


No. 13-P-837.

Hampshire.       May 9, 2014. – July 22, 2014.

Present:  Cohen, Sikora, & Agnes, JJ.


Search and Seizure, Motor vehicle, Reasonable suspicion.
     Controlled Substances.  Constitutional Law, Search and
     seizure, Reasonable suspicion.  Practice, Criminal, Motion
     to suppress, Interlocutory appeal.




     Complaint received and sworn to in the Northampton Division
of the District Court Department on November 26, 2012.

     A pretrial motion to suppress evidence was heard by Jacklyn
M. Connley, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Barbara A. Lenk, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


     Michael J. Russo, III, Assistant District Attorney (Thomas
H. Townsend, Assistant District Attorney, with him) for the
Commonwealth.
     Leah R. Kunkel for the defendant.

AGNES, J.  This is an interlocutory appeal by the Commonwealth from an order of a District Court judge allowing the defendant's motion to suppress evidence.  See Mass.R.Crim.P. 15, as appearing in 422 Mass. 1501 (1996).  The judge found, on the basis of the undisputed evidence, that the police were lawfully engaged in a community caretaking function when they responded to a report that a person in a car may be either having a seizure or suffering from a drug overdose.  What followed, as the facts below indicate, was the discovery of evidence indicating that the person in the vehicle, later identified as the defendant, Cyrus S. Fisher, possessed cocaine, a Class B controlled substance, and additional contraband.  For the reasons that follow, we conclude the judge erred in finding that the officer exceeded the scope of his authority when, during a well-being check, he ordered the defendant to step out of his motor vehicle.  Accordingly, we reverse the order allowing the defendant's motion to suppress.

Background.  The essential facts are not in dispute.  The only witness to testify at the hearing on the defendant's motion to suppress was Northampton police Officer Brendan McKinney.  He was the second police officer to arrive at the scene, a gasoline station and convenience store located on King Street.  It was approximately 1:25 A.M. on November 24, 2012, when he arrived and found Officer McGrath already on scene.  A third police

cruiser and the fire department soon arrived. Officer McKinney observed Officer McGrath engaged in conversation with the defendant, who was seated in a vehicle with the driver's side door open.[1] The defendant was asked if he had consumed any drugs or alcohol that evening and if he needed medical attention. He answered both questions in the negative, but his speech was slurred, his eyes were half-closed, and he was nodding his head up and down. There was no odor of an alcoholic beverage emanating from the defendant or the vehicle. The defendant was wearing baggy pants with a cargo pocket that was partly open and visible from outside the vehicle. What occurred at this point according to the judge's succinct findings of fact is the following:

> "[W]hen McKinney shined his flashlight on the pants, he saw a baggie sticking out of the pocket. He also saw what looked like a white powder in the baggie. He asked the defendant what it was, and asked him to take it out of his pocket. The defendant did, but he couldn't see immediately what it was because of the way the defendant held it in his hand. McGrath asked the defendant to exit the car, he was searched and found to be in possession of crack cocaine. During an inventory of the car, located on the driver, seat [sic] was an envelope containing baggies with what was believed to be [phencyclidine (PCP), a Class B controlled substance]. The defendant was placed under arrest."

---

[1] No evidence was presented at the hearing as to who opened the car door or when it was opened. Like the trial judge, we assume that the opening of the vehicle's door was not the result of a search. See Commonwealth v. Evans, 436 Mass. 369, 372-373 (2002) (when facts, viewed objectively, indicate driver who may be in need of medical attention, police may open car door to perform well-being check of driver without any further justification).

Standard of review. In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact unless they are clearly erroneous. See Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008). We give substantial deference to the judge's ultimate findings and rulings. See Commonwealth v. Eckert, 431 Mass. 591, 593 (2000). However, we independently review the correctness of the judge's application of constitutional principles to the facts as found. See Commonwealth v. Kaupp, 453 Mass. 102, 105 (2009).

The defendant maintains that the judge determined the credibility and weight of Officer McKinney's testimony and found that McKinney did not know what was in the baggie until after the defendant was removed from his car and searched. It is settled that the credibility of the witnesses and weight to be given their testimony are matters reserved exclusively for the judge. Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990). When, as in this case, the evidence consists exclusively of the oral testimony of a witness, the judge's subsidiary findings are accepted on appeal unless they are clearly erroneous. Commonwealth v. Jones, 375 Mass. 349, 353-354 (1978).

The judge found that Officer McKinney "saw what looked like a white powder in the baggie." In the absence of any further finding with respect to the credibility of the witness, a

finding that the officer observed what appeared to be white powder in a plastic baggie, as distinct from a finding that the officer observed white powder in a plastic baggie, is not constitutionally significant.[2]  See Commonwealth v. Whitehead, 85 Mass. App. Ct. 134, 138 (2014) (reasonable suspicion turns on probabilities, not hard certainties).  See also Commonwealth v. Spagnolo, 17 Mass. App. Ct. 516, 522 n.7, 523 n.9 (1984) (on motion to suppress, judge's task is to determine whether underlying basis for officer's action was sufficient; officer used word "guess" to describe reasonable and possible inference); Commonwealth v. Rosado, 84 Mass. App. Ct. 208, 214 n.7 (2013) (we do not read finding of fact stating that officer was not certain about observation, without more, as determination that testimony lacked credibility).

---

[2] When a judge makes subsidiary findings of fact, it is open to an appellate court to imply additional findings of fact so long as (1) "the evidence is uncontroverted," and (2) "the judge explicitly or implicitly credited the witness's testimony." Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).  In such a case, the ultimate result is governed by principles of law and may not be in agreement with the result reached by the judge.  An appellate court may not fill in gaps in a judge's findings of fact when they are materially incomplete or clearly erroneous, or when they lack a determination as to credibility.  Commonwealth v. Isaiah I., 450 Mass. at 819-821 & n.4.  See Commonwealth v. Rosado, 84 Mass. App. Ct. 208, 221 n.4 (2014) (Sikora, J., dissenting) ("A judge disbelieving testimony, as either inadvertent error or intentional misstatement, must make the discrediting finding or risk a misunderstanding by the reviewing court").

Discussion. The community caretaking doctrine is applicable principally to a range of police activities involving motor vehicles, see Commonwealth v. Duncan, 467 Mass. 746, 750 n.3 (2014), in which there are objective facts indicating that a person may be need of medical assistance or some other circumstance exists apart from the investigation of criminal activity that supports police intervention to protect an individual or the public. See Commonwealth v. Murdough, 428 Mass. 760, 762-764 (1999). The existence of objective grounds supporting police intervention for legitimate, noninvestigatory reasons excuses the need for a warrant, probable cause, or even reasonable suspicion. See Commonwealth v. McDevitt, 57 Mass. App. Ct. 733, 736 (2003).[3]

The law does not demand that an alert police officer must suppress his or her training and investigatory experience in carrying out the myriad of community caretaking functions society expects police officers to undertake for its protection.

_____

[3] There are "multitudinous everyday contacts between police officers and individuals" that do not involve "forcible intrusions on privacy" and for which no justification is required. Commonwealth v. Canavan, 40 Mass. App. Ct. 642, 646 (1996). Thus, it is settled that a police officer may approach a person on the street or sitting in a parked motor vehicle and engage the person in conversation without any justification. See Commonwealth v. Lyles, 453 Mass. 811, 815 (2009). It is only when a seizure takes place that justification in terms of objective evidence of criminal activity or the need to perform a community caretaking function is required. See Commonwealth v. Eckert, 431 Mass. at 593-594.

See id. at 736-737.  So long as the officer's conduct at the outset and throughout the course of exercising a community caretaking function is justified by the doctrine, the law does not attach significance to the officer's subjective motives.  See Commonwealth v. Murdough, 428 Mass. at 762, quoting from Commonwealth v. Murdough, 44 Mass. App. Ct. 736, 740 (1998) ("an officer's motive [does not] invalidate[] objectively justifiable behavior").

In performing a community caretaking function, a police officer's decision to detain a motorist for a brief period of time or to take other reasonable steps that intrude on a motorist's liberty in an effort to confirm whether emergency medical assistance is required or to determine the nature of the individual's apparent illness or impairment is not invalid because the acts taken by the officer also serve to uncover evidence of criminal activity.  Thus, it has been noted that "[c]ommunity care-taking functions sometimes blend almost imperceptibly into the investigation of criminal activity." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 4-2[f][1], at 4-32 (2013-2014 ed.).

In the present case, the judge correctly ruled that Officer McGrath and Officer McKinney acted reasonably in questioning the defendant to determine whether he needed medical assistance. The police officers faced a situation in which the operator of a

motor vehicle was impaired (slurred speech, eyes closing, head nodding).  While alcohol intoxication was certainly a possibility, the absence of the tell-tale odor of an alcoholic beverage made it reasonable for the officers to explore other causes.  Officer McKinney would have been derelict in his duty as a police officer if he did not take reasonable steps to determine the cause and extent of the defendant's impairment. See Irwin v. Ware, 392 Mass. 745, 762 (1984).

The judge ruled that the observation of the plastic baggie in the defendant's open pocket and the presence of what appeared to be white powder did not contribute in a meaningful way to the officer's suspicion because "[a] mere hunch is not enough to justify an exit order."  Although this is a correct statement of the law, it does not accurately fit the facts found by the judge.  "Where police officers have a reasonable, articulable suspicion that a person in a vehicle has committed, is committing, or is about to commit a crime, they may stop that vehicle, issue an exit order, and conduct a threshold inquiry. Though the officers were admittedly uncertain that a specific crime had occurred, their observations to that point were sufficient to raise a reasonable suspicion of criminal activity."  Commonwealth v. Greenwood, 78 Mass. App. Ct. 611, 616 (2011) (citations omitted).

Considering the totality of the factual circumstances -- a driver who exhibited signs of impairment, but who was not presenting with the constellation of symptoms commonly associated with alcohol intoxication, and the presence of a plastic baggie sticking out of his pants containing what appeared to be a white powder -- it was reasonable for the police officers to suspect that the defendant was in possession of narcotic drugs.  In such circumstances, an exit order is allowed because it is proportional to the suspicion that arose once the plastic baggie was observed.[4]  See Commonwealth v. Bostock, 450 Mass. 616, 622 (2008) (upholding exit order to prevent defendant's flight when reasonable suspicion of criminal activity arose during nonroutine motor vehicle stop).  See also Commonwealth v. Watson, 430 Mass. 725, 732 (2000).  The police

---

[4]  Our decision that the exit order was justified is based on our determination that the officers had reasonable grounds to believe the defendant had cocaine in his possession.  However, this should not be read to mean that an exit order was not a reasonable measure in support of their community caretaking responsibilities.  Viewed objectively, the facts known to the police were that the defendant was impaired due to a cause that was probably not alcohol related.  The police had an objectively reasonable belief that the defendant's safety and well-being were at risk, see Commonwealth v. Brinson, 440 Mass. 609, 615 (2003), and had a responsibility to ascertain the cause of the impairment, and whether immediate medical attention was required or whether the defendant was capable of driving or making other arrangements for transportation.  Commonwealth v. Murdough, 428 Mass. at 762-764 (1999).  In applying the community caretaking function, "[t]he ultimate standard . . . is reasonableness."  Cady v. Dombrowski, 413 U.S. 433, 439 (1973).

had a right to avoid the potential danger to themselves and to the public, as well as to the defendant himself, if he had attempted to drive away.[5]

Conclusion.  The motion judge properly recognized the distinction between the investigative functions and the community caretaking functions of the police, and that the latter are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."  Commonwealth v. Evans, 436 Mass. 369, 372 (2002), quoting from Cady v. Dombrowski, 413 U.S. 433, 441 (1973).  However, in performing a community caretaking function, the reasonable steps taken by the police to protect an individual or the public may lead to the discovery of evidence of a crime.  When this occurs, the police are no less entitled to seize the evidence and pursue the matter as a criminal case than they would be if the evidence was discovered inadvertently during a criminal investigation.

Order allowing motion to suppress reversed.

---

[5] The search of the defendant's person yielding evidence of "crack" cocaine and the subsequent seizure from the vehicle of PCP are not at issue in this appeal.