APPEALS COURT 
 
 COMMONWEALTH vs. MICHAEL W. TYSON

 
 Docket:
 23-P-229
 
 
 Dates:
 February 14, 2024 – September 30, 2024
 
 
 Present:
 Vuono, Massing, & Toone, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Assault and Battery on Certain Public Officers and Employees. Resisting Arrest. Police Officer. Intent. Arrest. Practice, Criminal, Dismissal.
 
 

             Complaint received and sworn to in the Brockton Division of the District Court Department on August 26, 2019. 
            A motion to dismiss was heard by Honor Kerry Segal, J. 
            Karen A. Palumbo, Assistant District Attorney, for the Commonwealth.
            Peter J. Brewer for the defendant.
            MASSING, J.  The defendant, Michael W. Tyson, moved to dismiss a criminal complaint charging him with assault and battery on a police officer in violation of G. L. c. 265, § 13D; resisting arrest in violation of G. L. c. 268, § 32B; and disorderly conduct in violation of G. L. c. 272, § 53, for lack of probable cause.  A District Court judge allowed the motion as to all three charges.  The Commonwealth appeals, but only as to the charges of assault and battery on a police officer and resisting arrest.  We affirm in part and reverse in part.
            Background.  We describe the facts as set forth in the arresting officer's police report filed in support of the application for the complaint.
            In August 2019, the arresting officer, a detective from the Brockton police department, responded to the scene of a stabbing to canvass the area and look for evidence.  The officer wore plain clothes but displayed his badge on his chest.  After knocking on a few doors and obtaining no helpful information, the officer noticed a black sedan with tinted windows parked on the street near the scene of the stabbing with the engine running.  The defendant was sitting in the driver's seat.
            The officer approached and asked the defendant to please roll down the window.  The defendant replied, "[W]hat for?"  The officer said that he was a police officer investigating a crime and talking to everyone on the street.  The defendant ignored two requests by the officer to roll down his window.  The officer then opened the driver's door and repeated that he was investigating a crime that had just occurred nearby.  The defendant responded, "I don't give a fuck" and "pulled the door into the left side of [the officer's] body forcefully."
            In response, the officer struck the defendant on the left side of his head and pulled him from the car.  The defendant "squared off" with the officer "with clenched fists."  The officer told the defendant that he was under arrest and ordered him to stop resisting.  The defendant "attempted to pull away but [the officer] handcuffed him."  The officer attempted to place the defendant in a sitting position, at which point the defendant reached toward his front right shorts pocket.  The officer "grabbed his hand to make sure that he didn't have any weapons and determined that he was reaching for a cellular phone."  Because, in the officer's words, the handcuffed defendant continued to be "resistive," the officer then "physically placed him in a sitting position and told him to cross his legs."  The defendant refused to cross his legs or to identify himself.  The officer radioed for backup and held the defendant until another officer arrived.
            A police dispatcher ran the license plate of the defendant's car and determined that it was owned by a woman who lived nearby.  The officer went to her house, and she identified herself as the defendant's mother.  The officer told her that "we were in the area for a stabbing and that when [he] approached the car[,] her son acted suspiciously, refused to identify himself[,] and was combative with me."  The mother stated that she had watched the incident and her son would not have acted like that.  The defendant was transported to police headquarters.
            Discussion.  A motion to dismiss a complaint for lack of probable cause is decided from the information within the "four corners of the complaint application" (citation omitted).  Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013).  In this case, the complaint application consists of a completed application form, the arrest report, a one-page narrative by the arresting officer, and the list of charges.  "The application must set forth sufficient facts to establish probable cause as to each element of the charged crime."  Commonwealth v. Santos, 94 Mass. App. Ct. 558, 560 (2018), citing Humberto H., supra at 565-566.  Probable cause "exists where the facts and circumstances . . . [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been . . . committed" (quotation and citation omitted).  Commonwealth v. Coggeshall, 473 Mass. 665, 667 (2016).  "Probable cause is a lower standard than proof by a preponderance of the evidence; 'it does not demand any showing that . . . a belief be correct or more likely true than false.'"  Commonwealth v. J.G., 100 Mass. App. Ct. 731, 734 (2022), quoting Commonwealth v. Skea, 18 Mass. App. Ct. 685, 689 (1984).  Our review of the order of dismissal is de novo.  See Humberto H., supra at 566.  Critically in this very close case, we must construe the complaint in the light most favorable to the Commonwealth.  See Santos, supra, citing Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 190 (2016).
            1.  Assault and battery on a police officer.  The Commonwealth contends that the judge erred in dismissing the charge of assault and battery on a police officer under G. L. c. 265, § 13D, first par.[1]  To establish assault and battery, the Commonwealth must prove that the defendant touched the victim "without having any right or excuse to do so and that the defendant's touching . . . was intentional."  Commonwealth v. Mitchell, 67 Mass. App. Ct. 556, 564 (2006).  To establish assault and battery on a police officer, the Commonwealth must also prove that the officer was "engaged in the performance of his duties at the time [of such assault and battery] and the defendant [knew] that the victim was an officer engaged in the performance of his duties."  Commonwealth v. Moore, 36 Mass. App. Ct. 455, 461 (1994).  See G. L. c. 265, § 13D.
            The Commonwealth based its assault and battery charge on the allegation that, after the officer opened the defendant's car door, the defendant "forcefully" pulled the door into the officer's body.  Although the officer unlawfully opened the door, and we understand the defendant's attempt to resist the officer's intrusion, we are constrained to conclude that the application alleged probable cause to believe that the defendant committed assault and battery on a police officer.
            Preliminarily, the application established probable cause to believe that the officer was "engaged in the performance of his duties" at the time.  G. L. c. 265, § 13D.  Notwithstanding the officer's unlawful conduct, the record before us does not present "the sort of egregious abuse of authority that would be required to strip an officer's actions of their official character."  Commonwealth v. Montes, 49 Mass. App. Ct. 789, 793 (2000).  See Commonwealth v. Gomes, 59 Mass. App. Ct. 332, 339 (2003) ("[a]lthough unlawful," officer's refusal to allow defendant to close door to residence was "neither conscience-shocking nor egregious"); Montes, supra ("[a] conviction under § 13D may well be barred" where "a police officer's on-duty conduct has become so flagrantly divorced from any legitimate law enforcement function that she no longer may be deemed to be acting within the scope of her appointed office").[2]
            There was similarly probable cause to believe that the defendant knew that the person who approached his car and spoke to him was a police officer engaged in the performance of his duties.  The defendant argues that because it was nighttime and his car windows were tinted, there is a "fair inference" that he did not know or believe that it was a police officer who had approached his car.  But we are constrained to draw inferences favorable to the Commonwealth.  The officer reported that he was wearing a badge and told the defendant that he was a police officer investigating a crime.  Those allegations suffice to establish this element of the offense.
            The allegations also established a "touching" without the officer's consent.  See Commonwealth v. Porro, 458 Mass. 526, 529 (2010), quoting Commonwealth v. Burke, 390 Mass. 480, 481 (1983) ("Where the touching is physically harmful, 'consent is immaterial,' but 'a nonharmful touching is a battery only if there is no consent'").[3]  The more difficult question is whether the touching was intentional.
            Assault and battery requires a touching that is intentional, not simply the result of an intentional act.  See Porro, 458 Mass. at 529; Commonwealth v. Ford, 424 Mass. 709, 711-712 (1997); Moore, 36 Mass. App. Ct. at 459.  However, the Commonwealth need not prove that the defendant intended to injure the victim.  See Ford, supra at 711; Commonwealth v. Deschaine, 77 Mass. App. Ct. 506, 514-515 (2010).  Probable cause of a defendant's intent may be inferred from the facts alleged in a complaint application, viewed in the totality of the circumstances, and the inferences do not have to be more likely than not.  See Humberto H., 466 Mass. at 566; J.G., 100 Mass. App. Ct. at 734.  Here, it is apparent that the defendant wanted nothing to do with the officer, and that the officer improperly forced further interaction.  At this point, however, according to the officer's report, the defendant told the officer that that he did not "give a fuck" about the officer's investigation and "pulled the door into the left side of [the officer's] body forcefully."  It can fairly be inferred that because the officer placed himself in a position to prevent the defendant from closing the car door, the defendant struck the officer with the door intentionally in an effort to end the unwanted encounter.  The defendant is, of course, free to argue at trial that he had no such intent, and that the contact was unforeseen or accidental.  See Commonwealth v. Bell, 83 Mass. App. Ct. 61, 64 (2013) (close questions of intent are best resolved by fact finder at trial rather than by judge considering motion to dismiss complaint).
            Finally, we must address whether the defendant had a right or excuse to intentionally use force against the officer to close his car door after the officer unlawfully opened it.  It is well established that police officers "may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries."  Commonwealth v. Murdough, 428 Mass. 760, 763 (1999).  Accordingly, it was appropriate for the officer to knock on the defendant's car door and attempt to ask the defendant questions pertaining to his investigation.  See id. at 763-764; Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 51 n.3 (2014).  He could not, however, open the car door without justification.  Because a car's interior is "subject to Fourth Amendment protection from unreasonable intrusions by the police," New York v. Class, 475 U.S. 106, 114-115 (1986), "a justification for that action had to be offered."  Murdough, supra at 764.  See Commonwealth v. King, 389 Mass. 233, 241 (1983) (investigatory check of vehicle, "regardless of its limited purpose and brevity, is an intrusion on privacy rights").
            Even taken in the light most favorable to the Commonwealth, the facts do not establish any constitutionally recognized justification for the officer's intrusion.  He was not checking on the defendant's health or safety.  See Commonwealth v. Evans, 436 Mass. 369, 372-373 (2002), quoting King, 389 Mass. at 242 (local police community caretaking function allows for "very limited and focused inspection of a vehicle to determine whether assistance or aid is required"); Murdough, 428 Mass. at 764-765; Commonwealth v. Mateo-German, 453 Mass. 838, 842 (2009) (community caretaking function does not apply "when the purpose is the detection or investigation of possible criminal activity").  He was not engaged in a traffic stop.  Cf. G. L. c. 90, §§ 21, 25 (governing warrantless arrests and refusals to submit to police officer).[4]  The defendant was not engaging in criminal activity, and there was no evidence to support the officer's later assertion to the defendant's mother that the defendant was acting "suspiciously."  The defendant's unwillingness to answer the officer's questions was not a crime.  To the contrary, "our law guards a person's freedom to speak or not to speak to a police officer."  Commonwealth v. Warren, 475 Mass. 530, 538 (2016).  That freedom includes the right to avoid "altogether any contact with police," id., as well as the right to refuse to answer or even listen to questions posed by a police officer, see Florida v. Royer, 460 U.S. 491, 497-498 (1983) (plurality); Commonwealth v. Martin, 457 Mass. 14, 20-22 (2010).
            But that freedom does not extend so far as to privilege the use of force to counteract an unlawful intrusion by a police officer engaged in his official duties.  "Notwithstanding the high value accorded the right to personal privacy, the modern view is to abolish or sharply curtail the use of force to resist police action."  Gomes, 59 Mass. App. Ct. at 341.  Where a police officer does not use excessive force against a person, but rather uses force "against property or to effect entry," a person may not use force to resist the officer or the entry.  Id. at 343.  See Commonwealth v. Moreira, 388 Mass. 596, 601 (1983) ("in the absence of excessive or unnecessary force by an arresting officer, a person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances"); Gomes, supra at 333 ("absent the use of excessive or unnecessary force by police upon his person, an individual may not forcibly resist even an unlawful entry into his residence by one who he knows or has good reason to believe is a police officer engaged in the performance of his duties").  The remedy for an unlawful governmental intrusion (unaccompanied by excessive force) upon one's personal privacy and autonomy is through the courts, not through the use of force.  See Moreira, supra at 600-601; Gomes, supra at 342-343.  As the application, in the light most favorable to the Commonwealth, does not establish that the officer used excessive force to open the defendant's car door, and "this is not the very rare case in which egregious police misconduct might warrant dismissal," Gomes, supra at 338, it was error to dismiss the complaint that adequately alleged assault and battery on a police officer.
            2.  Resisting arrest.  The Commonwealth also appeals from the dismissal of the charge for resisting arrest.
"A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:  (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."
G. L. c. 268, § 32B (a).
            The statute provides that the crime of resisting arrest is "committed, if at all, at the time of the 'effecting' of an arrest."  Commonwealth v. Grandison, 433 Mass. 135, 145 (2001).  The Commonwealth concedes that the arrest in this case was not effected until the officer told the defendant he was under arrest and, accordingly, the defendant's actions before that moment may not be considered in assessing the basis for this charge.[5]  Therefore, in assessing whether there is probable cause that the defendant violated G. L. c. 268, § 32B (a), we consider only those alleged actions that occurred after the officer told him he was under arrest.  See Commonwealth v. Grant, 71 Mass. App. Ct. 205, 209-210 (2008).
            "[W]hether the crime of resisting arrest has been made out is an intensely factual, nuanced inquiry that must consider the nature of the defendant's conduct or actions and the sequence of those actions in relation to corresponding action by the police officers involved."  Commonwealth v. Hart, 467 Mass. 322, 328 (2014).[6]  Here, the alleged facts do not establish that the defendant either (1) used or threatened to use physical force or violence against the officer or another; or (2) used any other means that created a substantial risk of causing bodily injury to the officer or another.  G. L. c. 268, § 32B (a).  In particular, the alleged attempt by the defendant to "pull away" before the officer handcuffed him is inadequate because it did not involve the use or threat of physical force or violence against the officer or anyone else or create a substantial risk of bodily injury to the officer or anyone else.
            In cases involving a defendant's attempt to move away during arrest, courts have upheld convictions under G. L. c. 268, § 32B (a), where that act of avoidance placed the officers at substantial risk of injury.  In Commonwealth v. Montoya, 457 Mass. 102, 105-106 (2010), for example, the court affirmed a conviction because the defendant created a substantial risk of injury to officers by fleeing and jumping over a fence that posed a tripping hazard into a deep and unsafe canal.  Other cases have similarly focused on whether the defendant's resistance placed an officer at risk.  See Grandison, 433 Mass. at 144-145 (four officers were required to handcuff defendant who refused to bend his arms and broke one arm free, actions which "could have caused one of the officers to be struck or otherwise injured, especially at the moment he freed his arm"); Commonwealth v. Lender, 66 Mass. App. Ct. 303, 304-306 (2006) (officer fell to ground during struggle after defendant refused to put arms together to be handcuffed, and defendant then resisted being placed in cruiser); Commonwealth v. Maylott, 65 Mass. App. Ct. 466, 469-470 (2006) (defendant's "exertion of force," which required two officers to push him against wall to consummate arrest, presented "a substantial risk of injury to them"); Commonwealth v. Katykhin, 59 Mass. App. Ct. 261, 262-263 (2003) (handcuffed defendant refused to get into police cruiser, stood upright "like a plank of wood," started a "tug of war" with arresting officer, and relented only after officer administered chemical spray).  None of these cases involved an arrest that was preceded by the officer assaulting the defendant.  When we consider that the officer in this case had just opened the defendant's car door without legal justification, struck him in the head, and pulled him out of the car, the allegation that the defendant initially attempted to pull away from the officer before submitting to handcuffs does not establish probable cause to find a violation of G. L. c. 268, § 32B (a).[7]
            Conclusion.  So much of the judge's order dismissing the charge of assault and battery on a police officer is reversed, and the complaint as to that charge is reinstated.  The order of dismissal is affirmed in all other respects.
So ordered.
            TOONE, J. (concurring in part and dissenting in part).  Judges must exercise vigilance to protect individuals from criminal complaints that are not supported by probable cause because proceeding in those circumstances imposes unnecessary burdens on the individuals and wastes judicial resources.  See  Commonwealth v. Humberto H., 466 Mass. 562, 570, 576 (2013).  This is a prime example of a prosecution that should go no further.  After reviewing the application for a complaint and hearing arguments from the parties, the District Court judge concluded that there was no probable cause to support the charges against the defendant, Michael W. Tyson.  I would affirm her decision in full.
            I agree with my colleagues that there is no probable cause to believe that the defendant resisted arrest.  The fact that the officer struck the defendant in the head and pulled him from the car was inadequate to make "a reasonable person in the defendant's circumstances" understand that he was being arrested.  Commonwealth v. Grant, 71 Mass. App. Ct. 205, 208 (2008).  The defendant's arrest was not effected until the officer told him he was under arrest, and his conduct after that point did not involve the use of "physical force or violence against the police officer" or "other means which create[d] a substantial risk of causing bodily injury to . . . [the] police officer."  G. L. c. 268, § 32B (a).
            I respectfully disagree that there is probable cause to believe that the defendant committed an assault and battery by closing his car door after the officer unlawfully opened it.  To establish a violation of G. L. c. 265, § 13D, the Commonwealth must prove, among other things, that the defendant touched the public employee "without having any right or excuse to do so" and that the defendant's touching was intentional.  Commonwealth v. Mitchell, 67 Mass. App. Ct. 556, 564 (2006).  Even viewing the allegations in the application in the light most favorable to the Commonwealth, and with due regard for the "not particularly burdensome" standard for probable cause, Commonwealth v. Coggeshall, 473 Mass. 665, 671 (2016), they do not establish that the defendant committed an intentional and unjustified use of force against the officer.
            Relying primarily on Commonwealth v. Gomes, 59 Mass. App. Ct. 332 (2003), the majority concludes that the assault and battery charge must proceed to trial because the defendant did not have "a right or excuse to intentionally use force against the officer to close his car door after the officer unlawfully opened it."  Ante at        .  It is of course true that, in the absence of excessive or unnecessary force by an arresting officer, an individual does not have the right to forcibly resist an arrest by an authorized police officer engaged in the performance of the officer's duties, "regardless of whether the arrest was unlawful in the circumstances."  Commonwealth v. Moreira, 388 Mass. 596, 601 (1983).  In Gomes, this court extended that principle to the unlawful entry by a police officer into a residence.  In that case, the defendant opened the door about a foot in response to the officer's knock, but declined the officer's requests to give his name, produce identification, or open the door further.  Gomes, supra at 335.  The officer placed one hand on the door and his foot in the door, forcibly keeping it open; the defendant asked him to remove his foot, and then attempted to push the door closed.  Id.  The officer prevented the defendant from closing the door, "using his foot and applying pressure with his hands, and directing that [the defendant] stop," and a struggle ensued in which the defendant shoved the officer in the chest.  Id.  The court concluded that although the officer's actions "exceeded what was constitutionally permissible," id. at 338, the defendant was not entitled to a jury instruction on self-defense because, in the absence of excessive or unnecessary force, there is no right "to use force to resist even an unlawful entry by the police."  Id. at 341.
            This case is not controlled by Gomes, Moreira, or any other case involving a defendant's intentional resistance to an officer's arrest or entry (lawful or not) because the facts here are fundamentally different.  As the majority acknowledges, the defendant was not acting in a suspicious manner when the encounter began.  Ante at        .  Sitting in his mother's car outside her house, he was approached by the officer, who asked him to roll down his window and answer questions pertinent to the officer's investigation.  The defendant's refusal to answer the officer's questions or otherwise respond was protected behavior.  See Commonwealth v. Warren, 475 Mass. 530, 538 (2016); Commonwealth v. Barros, 435 Mass. 171, 178 (2001).  Unlike in Gomes, the defendant did not open the door to engage with the officer; rather, the officer unlawfully opened the door after the defendant declined to answer him.  Even then, the defendant did not touch the officer, much less struggle with him.  The allegations indicate only that the defendant attempted to close the door, to end an encounter he did not initiate and had no obligation to participate in.
            The majority believes it can be fairly inferred that "the defendant struck the officer with the door intentionally," ante at        , based on the officer's allegation that, after he improperly confronted the defendant, the defendant "pulled the door into the left side of [the officer's] body forcefully."  But that statement tells us nothing about what the defendant intended.  Every object set in motion is done so "forcefully," regardless of what the mover intends.  Even if we were to, generously, interpret "forcefully" to mean "intentionally," we would still be left with only a conclusory assertion, not "reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing" that the intent element of the offense is satisfied.  Humberto H., 466 Mass. at 565, quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993).  Nor did the defendant's statement that he did not "give a fuck" about the officer's investigation constitute fighting words or a threat, see O'Brien v. Borowski, 461 Mass. 415, 428-429 (2012), abrogated on another ground by Seney v. Morhy, 467 Mass. 58, 61-62 (2014), or otherwise provide any basis to infer that the defendant intended to use force against the officer.
            In applying the standard of probable cause, "we are guided by the factual and practical considerations of everyday life on which reasonably prudent [people], not legal technicians, act" (quotation and citation omitted).  Coggeshall, 473 Mass. at 667.  Here, because the defendant's car was parked and car doors move in only two directions (open and shut), it is clear that the officer inserted his body in the door's arc after he opened it.  The allegations also establish that the opening and closing of the car door occurred in quick succession.  In light of these facts, the inference that the defendant acted intending to use force upon the officer, and not simply because he wanted the encounter to end, is implausible and inadequate to establish probable cause.  There might be probable cause to believe that the defendant acted in a reckless manner by closing the door, but, as the majority notes, recklessness does not satisfy the intent element in the absence of any alleged injury to the officer.  See Commonwealth v. Porro, 458 Mass. 526, 529-530 (2010).
            Although the majority asserts that the defendant can argue at trial that he lacked the requisite intent for this offense, he should not face the burdens of trial at all.[1]  Because there is no probable cause to find either that the defendant intended to use force against the officer or that he closed his car door "without having any right or excuse to do so," Mitchell, 67 Mass. App. Ct. at 564, I would affirm the order dismissing the complaint.
 
footnotes

 
            [1] This paragraph of the statute governs assault and battery committed against "any public employee."  Other paragraphs in G. L. c. 265, § 13D, authorize more severe penalties for defendants who attempt to disarm a police officer or cause serious bodily injury, but those offenses do not fall within the jurisdiction of the District Court and are not at issue here.  See G. L. c. 218, § 26.
            [2] Because the assault and battery charge is limited to the allegation that the defendant pulled his car door into the officer's body, we do not consider the officer's subsequent actions in this analysis, including his decision to strike the defendant in the head and pull him from the car.
            [3] Because the officer did not identify any injury he suffered as a result of the incident, much less one that was "more than transient and trifling," Commonwealth v. Burno, 396 Mass. 622, 627 (1986), the application did not allege a reckless battery.  See Porro, 458 Mass. at 529-530 ("A reckless assault and battery is committed when an individual engages in reckless conduct that results in a touching producing physical injury to another person; an unconsented touching is not sufficient").
            [4] Although the Commonwealth argued at the motion hearing that under G. L. c. 90, § 25, the operator of a motor vehicle must "identify himself to police upon being requested to do so,"  there is no allegation that the officer made such a request while the defendant was in his car.  Rather, the officer alleged that the defendant "refused to identify himself" only after he was arrested, handcuffed, and sitting on the ground.
            [5] Specifically, the Commonwealth acknowledged at oral argument that the allegation that the defendant "squared off" with the officer "with clenched fists," after the officer struck the defendant in the head and pulled him from the car, may not be considered as a basis for the charge because it occurred before "the point of arrest."  Nor do we consider the defendant's touching of the officer by forcefully attempting to close the car door.
            [6] The officer's characterization of the defendant as being "resistive" after being handcuffed does not establish probable cause.  See Hart, 467 Mass. at 328.
            [7] The defendant's attempt to reach for an object in his pocket, after he had been handcuffed, seated on the ground, and was under the officer's control, did not give rise to a substantial risk of bodily injury to the officer.  Nor did the defendant's refusal to identify himself or cross his legs.
 
footnotes for concurring

 
            [1] While I agree with the majority that "the remedy for unlawful governmental intrusion (unaccompanied by excessive force) upon one's personal privacy and autonomy is through the courts," ante at        , this matter is in court; and dismissal is the proper remedy where, as here, the complaint application fails to allege facts adequate to establish probable cause as to each element of the charged offenses.  See Commonwealth v. Russo, 494 Mass. 356, 361 (2024); Humberto H., 466 Mass. 565; Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002).